Calvin SLADE, Plaintiff–Appellant,

v.

HAMPTON ROADS REGIONAL JAIL, Defendant–Appellee,

and

Commonwealth Of Virginia, Intervenor.

No. 04–6481.

United States Court of Appeals, Fourth Circuit.

Argued: Feb. 4, 2005.

Decided: May 9, 2005.

---

**ARGUED:** Joshua Neal Auerbach, Public Justice Center, Baltimore, Maryland, for Appellant. Samuel Lawrence Dumville, Norris & St. Clair, P.C., Virginia Beach, Virginia, for Appellee. Joel Christopher Hoppe, Assistant Attorney General, Office of the Attorney General of Virginia, Richmond, Virginia, for Intervenor. **ON BRIEF:** Wendy N. Hess, Public Justice Center, Baltimore, Maryland, for Appellant. Kent K. Stanley, Norris & St. Clair, P.C., Virginia Beach, Virginia, for Appellee. Jerry W. Kilgore, Attorney General of Virginia, William E. Thro, State Solicitor General, Maureen Riley Matsen, Deputy State Solicitor General, Richmond, Virginia, for Intervenor.

Before WILKINSON and WILLIAMS, Circuit Judges, and Henry F. FLOYD, United States District Judge for the District of South Carolina, sitting by designation.

Affirmed by published opinion. Judge WILLIAMS wrote the opinion, in which Judge WILKINSON and Judge FLOYD joined.

## OPINION

WILLIAMS, Circuit Judge:

Calvin Slade, a pretrial detainee at the Hampton Roads Regional Jail (the Jail) in Virginia,[1] appeals the dismissal of his 42 U.S.C.A. § 1983 (West 2000) complaint. On appeal, Slade asserts that the Jail's policy of charging a pretrial detainee one dollar per day to help defray his cost of housing violates the Due Process Clause of the Fourteenth Amendment, as well as the Takings Clause of the Fifth Amendment as incorporated by the Fourteenth Amendment. Because the charge does not amount to punishment, however, we hold that it does not violate Slade's due process liberty right to be free from punishment before conviction. We also conclude that Slade failed to plead violations of either the Procedural Due Process Clause or the Takings Clause.

### I.

Slade was a pretrial detainee being held at the Jail when, on January 23, 2004, he filed a *pro se* "motion" in the United States District Court for the Eastern District of Virginia challenging the Jail's practice of charging him one dollar per day from his inmate account during his detention. The Jail's practice, which began in November 2003, is authorized by Va.Code § 53.1–131.3, which provides, in full:

> Any sheriff or jail superintendent may establish a program to charge inmates a reasonable fee, not to exceed $1 per day, to defray the costs associated with the

---

1. The Commonwealth of Virginia, as amici, entered an appearance on appeal to defend the constitutionality of the statute at issue.

For sake of clarity, we will refer to the appellees as "the Jail."

prisoners' keep. The Board [of Corrections] shall develop a model plan and adopt regulations for such program, and shall provide assistance, if requested, to the sheriff or jail superintendent in the implementation of such program. Such funds shall be retained in the locality where the funds were collected and shall be used for general jail purposes.

Va.Code Ann. § 53.1–131.3 (Michie Supp. 2003).

Pursuant to this statutory authority, the Board of Corrections developed a Model Plan to implement § 53.1–131.3 and assess the one dollar per day charge, and the Jail adopted the Model Plan as its official policy for collecting the fee. Under the Jail's policy, an inmate is informed of the charge upon his arrival at the Jail and asked to sign a form indicating that the charge was explained to him. The charge is then assessed daily from an inmates' account. An inmate account is an account that the Jail permits inmates to maintain in order to purchase commissary items and pay for medical co-payments. If an inmate has no funds in his account, the account is debited until funds become available. If an inmate is released, transferred, or paroled with a negative account balance, that balance will be applied to the inmate's new account if he is incarcerated at the Jail in the future but will not result in a judgment lien against the inmate.

The fees that are collected from the one dollar charge are held in a separate reve-nue account to be used for general jail purposes. The Jail's policy also provides that inmates who are adjudicated "not guilty" on all charges are entitled to a refund of the fee if, within 60 days, they make such a request in writing. Refunds are not eligible to those detainees who are found guilty, or whose charges are nolle prossed or dismissed.

Slade's *pro se* complaint alleged that the fee "violat[ed] inmates [sic] 14th Amendment Constitutional rights . . . to be treated equally, (equal treatment), and equal protection of the law." (J.A. at 4.) Slade also complained that "those inmates awaiting to go to trial [like him] should not be punished (8th Amendment) or treated differently than other state of Virginia inmates." (J.A. at 5.) Slade concluded his complaint by noting that "[t]he law must not be arbitrary, capricious, or contradictory." (J.A. at 5.) Slade requested injunctive relief, and also requested that the district court reimburse Slade and the other inmates who were paying the charge.

On February 20, 2004, the district court, sua sponte, dismissed Slade's complaint under 28 U.S.C.A. § 1915A (West Supp. 2004).[2] *See Slade v. Hampton Roads Regional Jail,* 303 F.Supp.2d 779 (E.D.Va. 2004). The district court construed Slade's complaint as raising two claims: one under the Equal Protection Clause of the Fourteenth Amendment and one under the substantive Due Process Clause of the Fourteenth Amendment.[3] The district

---

**2.** That section of the Prison Litigation Reform Act provides in pertinent part:
 (a) Screening.—The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
 (b) Grounds for dismissal.—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—
 (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
 (2) seeks monetary relief from a defendant who is immune from such relief.
28 U.S.C.A. § 1915A (West Supp.2004)

**3.** Although Slade's complaint stated that he was being punished in violation of the Eighth Amendment, because Slade was a pretrial de-

court dismissed the Equal Protection claim, reasoning "the Virginia statute does not violate equal protection because it applies to all inmates in local and regional jails. The mere fact that not all jails have, as yet, implemented the 'Prisoner's Keep' provision, does not create an equal protection violation with respect to plaintiff." (J.A. at 16.) The district court also dismissed the due process claim, because "a $1.00 a day fee for the purpose of defraying jail costs is not 'punishment' within the meaning of the Fourteenth Amendment." (J.A. at 16.) Slade filed a timely pro se appeal, and we have jurisdiction pursuant to 28 U.S.C.A. § 1291 (West 1993).

## II.

■■■ We apply de novo review a § 1915A dismissal for failure to state a claim. *See Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir.2002). Courts should not dismiss a complaint for failure to state a claim unless "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir.1999). "Moreover, when such a dismissal involves a civil rights complaint, 'we must be especially solicitous of the wrongs alleged' and 'must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief under any legal theory

which might plausibly be suggested by the facts alleged.'" *Veney*, 293 F.3d at 730 (quoting *Harrison v. United States Postal Serv.*, 840 F.2d 1149, 1152 (4th Cir.1988)).

On appeal, Slade has abandoned his Equal Protection claim. Instead, Slade now contends (1) that the charge is unconstitutional because it amounts to the punishment of pretrial detainees; (2) that the charge is unconstitutional because there are no procedures given before the charge is imposed; and (3) that the charge is an impermissible taking of property without just compensation. Before we turn to the merits, however, we briefly must address whether Slade's claim is moot.

## III. Mootness

■■■ "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969). By way of supplemental authority, the Jail informed the panel that Slade was released from pretrial detention in July 2004. Accordingly, it urges us to hold that his claim is no longer a "live" controversy. Slade's complaint, however, requested both injunctive and monetary relief. The request for monetary relief is not moot even though Slade has been released from Jail because Slade retains a "legally cognizable interest" in the outcome of the case, *i.e.*, the return of money the Jail deducted from his inmate account.

tainee and not a convicted prisoner, the district court properly determined that Slade's complaint should be analyzed under the Due Process Clause of the Fourteenth Amendment. *City of Revere v. Massachusetts General Hosp.*, 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983). Slade cited to the incorrect constitutional amendment in his complaint, but that does not indicate that his complaint failed to plead a claim that the charge is

punishment. In *Peters v. Jenney*, 327 F.3d 307 (4th Cir.2003), we held that a plaintiff who "pleaded the factual predicate for her First Amendment claim" but cited to the Fourteenth Amendment for that right had raised a First Amendment claim. *Id.* at 322. Accordingly, Slade's erroneous citation to the Eighth Amendment does not mean he failed to raise a Due Process claim against punishment.

*Cf. Mellen v. Bunting,* 327 F.3d 355, 365 (4th Cir.2003) (holding that students' claim for damages was not moot even though students had graduated during the pendency of the appeal).

▌ Slade's claim for injunctive relief, however, is moot because he is no longer in pretrial detention. Slade seeks to avoid this conclusion by urging that his case is one that is "capable of repetition yet evading review." The Supreme Court has explained that, "in the absence of a class action, the 'capable of repetition, yet evading review' doctrine [is] limited to the situation where two elements combined: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein v. Bradford,* 423 U.S. 147, 149, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975) (per curiam). In cases involving pretrial detention, the first inquiry is easily answered in Slade's favor. "Pretrial detention is by nature temporary, and it is most unlikely that any given individual could have his constitutional claim decided on appeal before he is either released or convicted." *Gerstein v. Pugh,* 420 U.S. 103, 111 n. 11, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). Slade's claim therefore evades review.

▌ Thus, our mootness inquiry into Slade's injunctive relief claim hinges on whether there is a reasonable expectation that Slade will be subject to the same action in the future. "[This] standard is not 'mathematically precise' and requires only a 'reasonable likelihood' of repetition." *Oliver v. Scott,* 276 F.3d 736, 741 (5th Cir.2002) (quoting *Honig v. Doe,* 484 U.S. 305, 318–19, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988)). In *Spencer v. Kemna,* 523 U.S. 1, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998), the Supreme Court held that a challenge to parole revocation proceedings was moot because the plaintiff was no longer on parole. *Id.* at 14–16, 118 S.Ct. 978. In so finding, the Court rejected the possible risk of future apprehension and conviction as meeting the "capable of repetition" prong. The Court noted, "we are ... unable to conclude that the case-or-controversy requirement is satisfied by general assertions or inferences that in the course of their activities respondents will be prosecuted for violating valid criminal laws. We assume that respondents will conduct their activities within the law." *Id.* at 15, 118 S.Ct. 978. *See also Mitchell v. Dupnik,* 75 F.3d 517, 528 (9th Cir.1996) (finding injunctive relief request against jail that housed a pretrial detainee was moot once pretrial detainee was convicted and post-conviction relief was denied).

Likewise, Slade will only find himself in pretrial detention at the Jail in the future if he is arrested for violating Virginia's criminal laws.[4] Because we presume that Slade will abide by the criminal laws of Virginia in the future, we do not believe there is a reasonable probability that he will return to the Jail as a pretrial detainee. Accordingly, Slade's claim for injunctive relief is moot.

4. We note that the Ninth Circuit has created an exception to the mootness holding of *Spencer v. Kemna,* 523 U.S. 1, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998) where the plaintiff introduces evidence that he has been detained "on more than one occasion." *Demery v. Arpaio,* 378 F.3d 1020, 1027 (9th Cir.2004) (finding a claim to enjoin jail officials from using web cameras to record pretrial detainees was not moot because evidence showed "plaintiffs likely will be reincarcerated at the Madison Street Jail"). Slade has presented no such evidence and we therefore have no occasion to consider whether such an exception would be appropriate.

## IV. Substantive Due Process

Turning to the merits of the case, Slade's first argument is that the charge is punitive in nature and, as such, cannot be imposed against pretrial detainees. As the district court correctly recognized, because Slade is a pretrial detainee, not a prisoner, the protections afforded by the Due Process Clause of the Fourteenth Amendment, and not those afforded by the Eighth Amendment, apply. *City of Revere v. Mass. General Hosp.*, 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983); *see also Robles v. Prince George's County*, 302 F.3d 262, 269 (4th Cir.2002) ("As a pretrial detainee, Robles' treatment and the conditions of his restraint are evaluated under the Due Process Clause of the Fourteenth Amendment."). Although several states have laws permitting the recoupment of some of the cost of housing prisoners[5] and several courts have had occasion to rule upon, and uphold, the constitutionality of room and board fees for convicted prisoners,[6] Slade's case appears to be the first case challenging the constitutionality of such practices as applied to pretrial detainees.

■ As a starting point, Slade does not challenge Virginia's right to subject him to pretrial detention. Instead, Slade contends that the charge for prisoners' keep amounts to punishment before conviction. "[T]he Government concededly may detain [a criminal defendant] to ensure his presence at trial and may subject him to the restrictions and conditions of the detention facility, so long as those conditions and restrictions do not amount to punishment...." *Bell v. Wolfish*, 441 U.S. 520, 536–37, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). "The due process rights of a pretrial detainee are at least as great as the eighth amendment protections available to the convicted prisoner; while the convicted prisoner is entitled to protection only against punishment that is 'cruel and unusual,' the pretrial detainee, who has yet to be adjudicated guilty of any crime, may not be subjected to *any* form of 'punishment.'" *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir.1988) (emphasis in original). Although detainees have a right to be free from punishment, clearly "not every inconvenience encountered during pretrial detention amounts to 'punishment' in the constitutional sense." *Id.* at 870. This conclusion is axiomatic because pretrial detention itself "may imperil the suspect's job, interrupt his source of income, and impair his family relationships." *Gerstein*, 420 U.S. at 114, 95 S.Ct. 854.

■ In determining whether the one dollar charge amounts to punishment, Slade and the Jail disagree over our relevant legal standard. Slade contends that under the Supreme Court's decision in *Austin v. United States*, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), to find the charge unconstitutional we need only find that the its purpose is "serving in part to punish." *Id.* at 610, 113 S.Ct. 2801. The Jail contends that the proper standard is that announced in *Bell* and adopted by our circuit in *Martin* and *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir.1992).

---

5. For instance, several states have statutes permitting a deduction from a prisoner's wages to recoup housing costs. *See, e.g.,* Ariz. Rev.Stat. § 41–1622, stat. note 3 (2003); Minn.Stat. § 243.23(2) (2003). Other states have broader statutes that simply give authority to recoup the costs of confinement. *See, e.g.,* Fla. Stat. § 960.293(2) (2003); Iowa Code § 356.7(1) (2003).

6. *See, e.g., Tillman v. Lebanon County Correctional Facility*, 221 F.3d 410, 417–24 (3d Cir. 2000) (upholding $10 per day housing fee); *Christiansen v. Clarke*, 147 F.3d 655, 657 (8th Cir.1998) (upholding withdrawal of $2,790 from inmate account to pay for cost of room and board during work release program).

Under this standard, the detainee first must show the imposition of a particular "disability." *Bell,* 441 U.S. at 538, 99 S.Ct. 1861. Assuming that a disability or harm is shown, then

> [t]o establish that a particular condition or restriction of his confinement is constitutionally impermissible "punishment," the pretrial detainee must show either that it was (1) imposed with an expressed intent to punish or (2) not reasonably related to a legitimate non-punitive governmental objective, in which case an intent to punish may be inferred.

*Martin,* 849 F.2d at 870.[7]

■ If there is no express intent to punish, our inquiry hinges on whether " 'an alternative purpose to which [the act] may rationally be connected is assignable for it' and the action does not appear 'excessive in relation to the alternative purpose assigned.' " *Robles,* 302 F.3d at 269 (quoting *Bell,* 441 U.S. at 538, 99 S.Ct. 1861) (alteration in original).

We believe that Slade's argument is misplaced and that *Martin/Hill* continues to guide our inquiry. *Austin* addressed the question of whether the Excessive Fines Clause of the Eighth Amendment could apply to *in rem* civil forfeiture proceedings, 509 U.S. at 610, 113 S.Ct. 2801, and does not contain a single citation to *Bell* or any case involving the due process rights of pretrial detainees. In addition, recent case law reviewing conditions of pretrial detention and confinement still rely exclusively on *Bell. See, e.g., Demery,* 378 F.3d at 1028 (applying two-part *Bell* inquiry in

finding that practice of placing web-cams in pretrial detainees' cells and holding area violated Due Process right to be free from punishment); *Broussard v. Parish of Orleans,* 318 F.3d 644, 658–59 (5th Cir.2003) (collecting cases).

Accordingly, absent an explicit indication to the contrary from the Supreme Court, we will continue to apply *Bell* and *Martin/Hill* to claims by pretrial detainees that certain conditions of confinement amount to punishment. Thus, we must determine if the fee is a "disability." If we answer that question in the affirmative, we must ask whether the fee's express purpose is to punish, or whether " 'an alternative purpose to which [the act] may rationally be connected is assignable for it' and the action does not appear 'excessive in relation to the alternative purpose assigned.' " *Robles,* 302 F.3d at 269 (quoting *Bell,* 441 U.S. at 538, 99 S.Ct. 1861) (alteration in original). In conducting this inquiry, we must "be mindful that these inquiries spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention facility." *Bell,* 441 U.S. at 539, 99 S.Ct. 1861.

■ Although "[t]here is, of course, a de minimis level of imposition with which the Constitution is not concerned," *Ingraham v. Wright,* 430 U.S. 651, 674, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977), we need not decide whether the one dollar per day charge is a "disability" because, regardless, we hold that the charge is not punishment. Slade has not shown that the ex-

---

7. Our standard is culled from the one announced by the Court in *Bell.* The Court instructed lower courts to determine if a pretrial detainee was punished by looking to whether there was an express intent to punish and "whether an alternative purpose to which [the restriction] may rationally be connected

is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." *Bell,* 441 U.S. at 538, 99 S.Ct. 1861 (quoting *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963)).

press purpose of the one dollar per day charge is to punish or that it is not rationally related to an alternative legitimate governmental interest. In fact, § 53.1–131.3 states that the purpose of the charge is to "defray the costs associated with the prisoners' keep," not to punish pretrial detainees. Moreover, while the statute expresses no intent to punish on its face, it asserts an alternative, legitimate governmental purpose for the charge. To that end, funds generated by the charge are to "be used for general jail purposes." Va. Code Ann. § 53.1–131.3. Under the Jail's policy, these funds are placed into a separate revenue account for general jail purposes. The Court has recognized that "the effective management of the detention facility ... is a valid objective." *Bell,* 441 U.S. at 539, 99 S.Ct. 1861; *see also Broussard,* 318 F.3d at 659 (holding that providing funds to administer bail-bond system was a legitimate government purpose). The charge has a rational relationship to this legitimate government interest, and it is not excessive in relation to that purpose. Rather, it is an effort to offset the cost of housing pretrial detainees, as well as convicted prisoners, by requiring such individuals to aid in the cost of their housing. A charge of one dollar per day is not excessive for that goal.

We therefore conclude that the one dollar per day charge for prisoners' keep does not amount to the unconstitutional punishment of pretrial detainees.

## V. Procedural Due Process

Slade's second argument is that, because no predeprivation procedures are afforded before the charge is deducted from a detainee's inmate account, his procedural due process rights were violated. The district court did not review this claim, because the complaint makes no reference to procedural due process.

Federal Rule of Civil Procedure 8(a)(2) provides that a viable complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This requirement is by no means onerous; instead, it is designed to ensure that the complaint "will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim." *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Under this pleading system, a plaintiff must only "set forth facts sufficient to allege each element of his claim." *Dickson v. Microsoft Corp.,* 309 F.3d 193, 213 (4th Cir.2002).

Even under the notice pleading standards of Rule 8, and even accepting that "the long-standing practice is to construe *pro se* pleadings liberally," *Hill v. Braxton,* 277 F.3d 701, 707 (4th Cir.2002), we cannot say that Slade's complaint alleges a violation of his procedural due process rights. Slade's complaint states two constitutional claims: punishment under the Eighth Amendment and equal protection under the Fourteenth Amendment. Nothing in Slade's complaint would put the Jail on notice that he intends to pursue a theory that the charge violates his procedural due process rights. Slade points us to *Peters v. Jenney,* 327 F.3d 307 (4th Cir. 2003), to support his position that his complaint raised a such a claim. As discussed, *supra* note 3, in *Peters,* we held that a plaintiff who "pleaded the factual predicate for her First Amendment claim" but alleged that the Fourteenth Amendment was the source of her free speech rights nevertheless raised a First Amendment claim. *Id.* at 321. Nothing in *Peters* aids Slade.

While *Peters* permits us to decide the merits of Slade's substantive due process claim, it does not alter the basic requirement that a plaintiff plead adequate facts to put the defendant on notice of the claims it is facing. Slade's factual allegations do not give any notice that he is alleging a procedural due process violation.

 Nonetheless, even if we were to find that Slade's complaint adequately presents a claim for a violation of his procedural due process right, we would find that the imposition of the one dollar charge does not violate that right. The Fourteenth Amendment provides that no "State [shall] deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV. Given this constitutional command, we pose two questions when reviewing a claimed procedural due process violation: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State, the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989) (citations omitted). Of course, due process "is flexible and calls for such procedural protections as the particular situation demands" in order "to minimiz[e] the risk of error." *Greenholtz v. Inmates of the Neb. Penal and Corr. Complex*, 442 U.S. 1, 12–13, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979). Furthermore, "[t]he amount of notice due depends on the context." *Reynolds v. Wagner*, 128 F.3d 166, 179 (3d Cir.1997).

 The Supreme Court requires lower courts to consider three factors when determining if procedures are constitutionally sufficient: (1) the private interest to be affected by the action; (2) the risk of erroneous deprivation of that interest through the procedures that were used and the probable value of added procedures; and (3) the government's interest, including the fiscal and administrative burdens of added procedures. *Mathews*, 424 U.S. at 335, 96 S.Ct. 893.

The Jail concedes that Slade has a property interest in the one dollar per day that it removed from his account.[8] This property interest, however, is limited because Virginia law provides that a pretrial detainee must be brought to trial within five months of a probable cause hearing, a fact that means the one dollar per day charge will be imposed for only a limited period. Va.Code Ann. § 19.2–243 (Michie 2004). The Jail, as discussed, has a legitimate interest in attempting to defray the costs of a prisoner's keep and a legitimate interest in the collection of the fee. There is also little risk of erroneous deprivation that a pre-deprivation hearing would ameliorate. The daily deduction of the charge from the prisoner's account is a ministerial matter with no discretion and minimal risk of error. *See Tillman v. Lebanon County Correctional Facility*, 221 F.3d 410, 422 (3d Cir.2000) (noting that collection of a housing cost "involve [d] routine matters of accounting, with a low risk of error").

---

**8.** We note that in *Washlefske v. Winston*, 234 F.3d 179 (4th Cir.2000), we held that, for purposes of the Takings Clause, convicted prisoners in Virginia did not have a property right in the interest earned on their prison accounts. *Id.* at 186. *Washlefske* rested upon the fact that prisoners had limited property rights at common law and the proposition that "if a statute creates a property right not previously recognized ... the property interest so created is defined by the statute." *Id.* at 184. Accordingly, we do not believe its rationale compels a finding in this case that Slade, a pretrial detainee whose inmate account contained funds that were not created by a limited statute, lacks a property interest in the principal in his account for purposes of the Due Process Clause.

"[T]o require pre-deprivation proceedings for what are essentially ministerial matters would significantly increase transaction costs and essentially frustrate an important purpose of the program, which is to reduce the [Jail's] costs of incarcerating prisoners." *Id.* Accordingly, we do not believe that procedural due process requires a pre-deprivation hearing before the charge is deducted from a prisoner's account.[9]

We do not believe that Slade's complaint fairly presents a claim for a violation of his procedural due process right. Even if the complaint can be so read, we do not believe that procedural due process required a hearing before the charge was debited from Slade's account.

## VI. The Takings Claim

Finally, Slade contends that the charge violates the Takings Clause, which provides that a State shall not take "private property ... for public use, without just compensation." U.S. Const. amend. V. The district court's opinion did not include any discussion of whether the charge violated the Takings Cause.

 Slade's Takings Clause claim suffers from the same pleading deficiency as his procedural due process claim. Slade's complaint makes no mention of the word "property," "taken," or "just compensation" and does not put the Jail on notice that Slade intends to pursue a claim under the Takings Clause. Slade contends that his complaint does raise such a claim because it cites to the Fourteenth Amendment, and the Takings Clause, although located in the Fifth Amendment, applies to the states by virtue of the Fourteenth

Amendment. *Chicago, Burlington & Quincy R.R. v. Chicago,* 166 U.S. 226, 239, 17 S.Ct. 581, 41 L.Ed. 979 (1897). Thus, argues Slade, the requirements of Rule 8 are satisfied because the proper constitutional amendment appeared in the complaint. This argument goes too far: all of the Bill of Rights that apply to states do so by virtue of the Fourteenth Amendment. A lone citation to the "14th Amendment [right to be] treated equally," (J.A. at 4), cannot suffice to put a party on notice that it faces claims arising from all of the incorporated rights. *Cf. Peters,* 327 F.3d at 321 (holding that citation to First Amendment plus facts supporting a free speech claim was sufficient to put defendant on notice). In sum, "notice pleading requires generosity in interpreting a plaintiff's complaint. But generosity is not fantasy." *Bender v. Suburban Hosp. Inc.,* 159 F.3d 186, 192 (4th Cir.1998). Accordingly, we conclude that Slade's complaint failed to state a claim under the Takings Clause.

Moreover, we note that, even if Slade's complaint did state such a claim, the merits of such a claim are dubious. First, a strong argument can be made that the charge at issue is a "reasonable user fee" and not a taking. *United States v. Sperry Corp.,* 493 U.S. 52, 63, 110 S.Ct. 387, 107 L.Ed.2d 290 (1989). In addition, because a state can, upon a finding of probable cause, deprive an individual of his liberty prior to trial, *see Gerstein,* 420 U.S. at 114, 95 S.Ct. 854, such a finding of probable cause likely could also support the taking of the minimal charge of a dollar per day, depending upon the lawfulness of the arrest and a close link between the charge and the cost of pretrial detention. *Cf. Bell,* 441 U.S. at 540, 99 S.Ct. 1861 ("in addition to ensuring

9. We note that Slade has not alleged the absence of a post-deprivation remedy. Clearly, Slade had the Jail's grievance procedures available to him. In addition, the Jail permits

persons adjudicated not guilty on all charges to write, within 60 days, for a refund of the fee.

the detainees' presence at trial, the effective management of the detention facility once the individual is confined is a valid objective that may justify imposition of conditions and restrictions of pretrial detention."). There is no contention in this case that the state acted unlawfully in detaining appellant. The procedures of commitment are conceded to conform to all constitutional norms. Given that fact, the imposition of a modest and non-punitive charge to defray costs cannot be said to transgress the state's constitutional obligations.

## VII.

In sum, we hold that § 53.1–131.3 is constitutional as applied to pretrial detainees. In so holding we are not opining on the wisdom of the policy at issue, but recognizing that "[r]espect for the institutions of self-government requires us, in all but the rarest of cases, to defer to the actions of legislative bodies." *Brzonkala v. Virginia Polytechnic Institute and State University*, 169 F.3d 820, 890 (4th Cir. 1999) (en banc) (Wilkinson, Chief J., concurring). Moreover, "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform." *Procunier v. Martinez*, 416 U.S. 396, 405, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974) *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401, 413–414, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989). "[U]nder the Constitution, the first question to be answered is not whose plan is best, but in what branch of the Government is lodged the authority to initially devise the plan." *Bell*, 441 U.S. at 562, 99 S.Ct. 1861. Our inquiry "must be limited to the issue of whether a particular system violates any prohibition of the Constitution," *id.*, and the Jail's policy does not. Accordingly, we affirm the district court's dismissal of Slade's complaint under § 1915A.

*AFFIRMED*