**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LESTER R. SHINAULT,
                *Plaintiff-Appellant*,

v.

DICK HAWKS; TAMI DOHRMAN;
MARTHA MCDANIEL; OREGON
DEPARTMENT OF CORRECTIONS
GENERAL SERVICE DIVISION,
                *Defendants-Appellees*.

No. 13-35290

D.C. No.
3:11-cv-00436-
PK

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the District of Oregon
Anna J. Brown, District Judge, Presiding

Argued and Submitted
December 8, 2014—Seattle, Washington

Filed January 22, 2015
Amended April 6, 2015

Before: Michael Daly Hawkins, M. Margaret McKeown,
and Richard C. Tallman, Circuit Judges.

Order;
Opinion by Judge Hawkins

## SUMMARY*

### Prisoner Civil Rights

The panel affirmed the district court's summary judgment in an action brought by an Oregon state prisoner alleging that state officials violated his rights under the Fourteenth and Eighth Amendments when the Oregon Department of Corrections froze more than $60,000 in his inmate trust account to recover the cost of his incarceration.

Plaintiff received a $107,416.48 settlement from a medical liability claim against a drug manufacturer whose products (prescribed while not in custody) caused him to develop diabetes. Addressing plaintiff's procedural due process claim, the panel held that a state must provide a pre-deprivation hearing before freezing substantial inmate assets. The panel nevertheless affirmed the district court's summary judgment in favor of defendants on the basis of qualified immunity because the constitutional obligation was not clearly established at the time of the conduct.

Plaintiff also asserted that the freeze and withdrawal of his funds constituted deliberate indifference to his medical needs under the Eighth Amendment because he intended to use the funds to secure medical treatment following release from incarceration. Rejecting the Eighth Amendment claim, the panel held that prison officials did not deprive plaintiff of care during his period of incarceration and a state's obligation

---

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

to provide medical care does not extend to shielding assets in inmate accounts.

## COUNSEL

Daniel H. Bookin and Anna-Rose Mathieson (argued), O'Melveny & Myers LLP, San Francisco, California, Pro Bono Counsel for Plaintiff-Appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, Peenesh H. Shah (argued), Assistant Attorney General, Salem, Oregon, for Defendants-Appellees.

## ORDER

The opinion filed on January 22, 2015, and published at 776 F.3d 1027, is hereby amended as follows:

On page 1032, the following text should be placed in a new footnote inserted after the words <significant sum in the inmate's account.>:

> Our holding is of course limited to circumstances in which the government's interest arises from recouping incarceration costs. We need not and do not decide here whether, or when, a pre-deprivation hearing is required when the state's action is motivated by concerns other than those at stake when the government is seeking to defray the costs of incarceration.

With this amendment, the petition for panel rehearing is denied. Judges McKeown and Tallman have voted to deny the petition for rehearing en banc and Judge Hawkins so recommends. The full court has been advised of the petition for rehearing en banc and no judge of the court has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

Appellees' petition for rehearing and petition for rehearing en banc are **DENIED**. No further petitions for rehearing or rehearing en banc will be entertained.

---

**OPINION**

HAWKINS, Circuit Judge:

Lester Shinault ("Shinault") appeals the adverse grant of summary judgment on his claim that state officials violated his rights under the Eighth and Fourteenth Amendments when the Oregon Department of Corrections ("ODOC") froze more than $60,000 in his inmate trust account to recover the cost of his incarceration. The district court held that Shinault received sufficient process because the State held a hearing prior to withdrawing the funds and that he did not suffer an injury under the Eighth Amendment. We affirm the district court on the Eighth Amendment claim because a state's obligation to provide medical care does not extend to shielding assets in inmate accounts. We disagree with the district court's due process determination because a state must provide a pre-deprivation hearing before freezing substantial inmate assets. Yet, we ultimately affirm on the basis of qualified immunity because the constitutional

obligation was not clearly established at the time of the conduct.**[1]**

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Lester Shinault was incarcerated with ODOC from May 19, 2005, until February 5, 2007, and again from October 23, 2008, until August 14, 2009, for felony convictions. During the latter term of incarceration, Shinault received a $107,416.48 settlement from a medical liability claim against a drug manufacturer whose products (prescribed while not in custody) caused him to develop diabetes.

Shinault's counsel in the product liability suit deposited the settlement proceeds into Shinault's inmate trust account. ODOC establishes trust accounts for each inmate, which are subject to various regulations governing accrual of interest, limitations on use and access, and offset for indebtedness. OR. ADMIN. R. 291-158-0015 *et seq.* Oregon law establishes that inmates are liable for the full cost of their incarceration, subject to various limitations. OR. REV. STAT. §§ 179.620; 179.640. For instance, officials must take into consideration the inmate's ability to pay, *id.* § 179.620(1)-(2), and "the inmate's need for funds for personal support after release." OR. ADMIN. R. 291-203-0040(5). Officials have discretion to waive collection "based on the best interest of the inmate or the department." *Id.* 291-203-0080.

---

**[1]** The State contends that Shinault's claims are barred by sovereign immunity. While sovereign immunity bars suits against states and their agencies, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984), we don't find Shinault's pleading error fatal to his claims, particularly where he has requested the substitution of parties.

Relying on this authority, ODOC issued an order on May 29, 2009, requiring Shinault to pay $65,353.94, the estimated cost of his current and previous incarceration. Oregon calculates the cost of incarceration by multiplying the daily cost of care and the number of days an inmate is incarcerated. The daily cost of care is the quotient of the total cost of inmate care across the ODOC system divided by the number of inmates. The order advised Shinault of his right to contest the order, which he pursued by requesting a case hearing on June 2, 2009.

On the same day that Shinault requested a case hearing, ODOC transferred $65,353.94 into a "reserved miscellaneous" sub-account in Shinault's name. The record indicates that, after the transfer, Shinault could no longer access or use the funds in the "reserved miscellaneous" sub-account. ODOC took the position at the administrative hearing that it was "holding" and had "set aside" the funds.

After requesting and receiving a postponement of the administrative hearing, Shinault's privately retained counsel withdrew for unclear reasons about one month prior to the hearing. Shinault received ODOC's exhibits and filings the morning of the hearing and struggled to represent himself ("Your Honor, I don't know what I'm doing here . . . I'm in left field here."). He asked for a delay and the opportunity to hire new counsel, both of which were denied by the Administrative Law Judge ("ALJ").[2] The ALJ ultimately

---

[2] Shinault earlier filed an unopposed motion to supplement the record on appeal to include the transcript of an October 23, 2009, administrative hearing. The transcript was included in the excerpts of record. The motion is, therefore, denied as moot.

ordered Shinault to pay $61,352.39, and the funds were withdrawn about one year later.[3]

Shinault did not appeal the ALJ order. Instead, he filed this action, alleging various constitutional harms. Defendants moved for summary judgment on all claims. A magistrate judge issued findings and recommended granting summary judgment on all claims. Over Shinault's objections, the district court adopted those recommendations.

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction under 28 U.S.C. § 1291. A grant of summary judgment is reviewed de novo. *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc). The court, viewing the facts in the light most favorable to the plaintiff, must determine whether any genuine issues of material fact exist. *Id.*

## ANALYSIS

### I.  Procedural Due Process

The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law." Due process "is a flexible concept that varies with the particular situation." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). Due process protections extend

---

[3] ODOC reduced the order from $65,353.94 to $61,352.39 because it withdrew $4,088.96 from the "reserved miscellaneous" account to pay several garnishments after issuing the initial order. The account had earned $87.41 in interest during this intervening period.

only to deprivations of protected interests. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569–70 (1972).

An individual's property is a fundamental example of a protected interest. *See Fuentes v. Shevin*, 407 U.S. 67, 86 (1972). More specifically, "[t]here is no question that [an inmate's] interest in the funds in his prison account is a protected property interest." *Quick v. Jones*, 754 F.2d 1521, 1523 (9th Cir. 1985). Shinault's trust account funds are within the scope of the Fourteenth Amendment.

Once a protected interest is found, we employ the three-part balancing test of *Mathews v. Eldridge*, 424 U.S. 319 (1976), to determine whether a pre-deprivation hearing is required and what specific procedures must be employed at that hearing given the particularities of the deprivation. *Brewster v. Bd. of Educ.*, 149 F.3d 971, 983–84 (9th Cir. 1998). The *Mathews* test balances three factors: (1) the private interest affected; (2) the risk of erroneous deprivation through the procedures used, and the value of additional safeguards; and (3) the government's interest, including the burdens of additional procedural requirements. *Mathews*, 424 U.S. at 335.

Recalling that due process varies depending on the particularities of a case, every action affecting an inmate trust account does not necessarily implicate a substantial private interest under the first *Mathews* prong. Here, however, Shinault's interest was clearly substantial, because ODOC deprived him of access to a significant amount of his funds. *See Quick*, 754 F.2d at 1522–23 ($66 charge merits pre-deprivation process); *cf. Sickles v. Campbell Cnty., Ky.*, 501 F.3d 726, 730 (6th Cir. 2007) (withdrawals of $110 and $20 do not implicate substantial private interest).

In terms of the second *Mathews* factor, two aspects of Oregon's regulatory scheme risk erroneous deprivation. The first—calculating the daily cost of care—involves mere arithmetic, but the calculations are more complex than flat fee arrangements found to involve minimal risk of error. *See, e.g.*, *Slade v. Hampton Roads Reg'l Jail*, 407 F.3d 243, 253–54 (4th Cir. 2005) (charging inmate $1 per day is a "ministerial" act); *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 413, 422 (3d Cir. 2000) (taking $10 per day from inmate is a "routine matter[] of accounting."). In fact, ODOC admits that it erred slightly by using the incorrect daily rate for one period of incarceration. In addition, the State's obligation to determine an inmate's ability to pay based on the inmate's estate, need for funds for personal support, and availability of benefits is an individualized decision that poses a risk of error. OR. ADMIN. R. 291-203-0040(5).

As to the third *Mathews* factor, the government's interest in conserving taxpayer resources by sharing incarceration costs is substantial. *Sickles*, 501 F.3d at 731. Yet, the third factor is balanced by the need to assure that additional procedural safeguards are not administratively burdensome. *Montanez v. Sec'y Pa. Dep't of Corr.*, 2014 WL 5155040, at *8 (3d Cir. Aug. 15, 2014).

The Supreme Court "usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (citations omitted). So, "[i]n situations where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation

tort remedy to compensate for the taking." *Id.* at 132.[4] However, post-deprivation process can suffice "in limited cases" when prompt action is required, an important government interest is involved, and there is substantial assurance that the deprivation is not baseless or unwarranted. *Fed. Deposit Ins. Corp. v. Mallen*, 486 U.S. 230, 240 (1988). For instance, temporary suspensions of an indicted bank officer, *id.* at 240–41, a horse trainer suspected of doping, *Barry v. Barchi*, 443 U.S. 55, 64 (1979), and a police officer based on a drug-related charge, *Gilbert v. Homar*, 520 U.S. 924, 932 (1997), did not require pre-deprivation hearings.

The results of the *Mathews* balancing test point to the need for a pre-deprivation hearing prior to freezing Shinault's funds. Compared to the cases above, the State's interest does not require such prompt action that a pre-deprivation hearing is infeasible. While state officials could temporarily suspend individuals from their jobs without a hearing in order to preserve the integrity of those regulated professions and protect the public, the integrity of Oregon's prison system does not diminish if a hearing precedes a freeze of inmate assets, particularly because the funds in fact remain in the State's control. Nor does the financial viability of the correctional system require immediate recoupment of inmate costs given their insignificance in relation to ODOC's overall budget. In other words, Oregon's interest in administering cost-effective and safe prisons is significant, but recouping incarceration costs does not rise to a level which would

---

[4] The Supreme Court required pre-deprivation hearings prior to terminating public-sector employment, *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985), cutting off utility service, *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 18 (1978), and suspending a public-school student, *Goss v. Lopez*, 419 U.S. 565, 579 (1975).

obviate the need for a pre-deprivation hearing in advance of action.

Given Shinault's substantial interest, the risk of erroneous deprivation, and the ability to provide a hearing without compromising a significant government interest, we hold that a state must provide a hearing prior to freezing a significant sum in the inmate's account.**⁵**   Thus, we conclude that Shinault received insufficient due process as the result of Oregon's actions.

Nor should providing a pre-deprivation hearing be administratively burdensome.   Several jurisdictions have been able to do so in similar circumstances.   For instance, the State of Montana places the authority to collect incarceration costs with the sentencing court, MONT. CODE ANN. § 7-32-2245, and notice and the opportunity to respond is central to determining whether the imposition of costs during sentencing is lawful.   *See State v. Johnson*, 302 Mont. 265, 272, 14 P.3d 480, 485 (2000).   The State of California requires a hearing and determination of an inmate's ability to pay prior to charging incarceration costs.  CAL. PENAL CODE § 1203.1c (providing individuals entitled to representation for underlying criminal charge with right to counsel at hearing). The State of Iowa "requires that prison administrators provide [w]ritten notice of the amount of the deduction . . . to the inmate, who shall have five days after receipt of the notice to

---

**⁵** Our holding is of course limited to circumstances in which the government's interest arises from recouping incarceration costs.  We need not and do not decide here whether, or when, a pre-deprivation hearing is required when the state's action is motivated by concerns other than those at stake when the government is seeking to defray the costs of incarceration.

submit in writing any and all objections to the deduction." *Montanez*, 2014 WL 5155040, at \*8–9 (alterations in original) (citations and internal quotation marks omitted). Ohio prison administrators "must provide notice to the inmate of the debt and its intent to seize money from the inmate's account, inform the inmate of a right to claim exemptions, and provide the inmate with an opportunity to assert any exemption or defense before any money may be withdrawn from the account." *Id.*

At a minimum, due process requires that inmates be informed of their financial liability (including the basis for the calculation), and have a meaningful opportunity to contest the assessment before significant assets are deducted or frozen. *See Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Oregon's May 29, 2009, order satisfied the notice component. The opportunity to object protects against the possibility of error in calculating incarceration costs and determining ability to pay. We do not suggest that ODOC must provide each inmate with a formal, judicial-like hearing prior to freezing inmate accounts. Neither do we observe that the administrative hearing that preceded the withdrawal of Shinault's funds was deficient, apart from the process afforded prior to freezing his assets. Rather, prior to such a freeze, Oregon must give notice and provide a meaningful opportunity to object. ODOC retains discretion, consistent with its constitutional obligations, to satisfy this requirement in a flexible and cost-effective manner.

## II. Qualified Immunity

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing

(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In order to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft*, 131 S. Ct. at 2083. Because the *Mathews* test "boils down to an ad hoc balancing inquiry," procedural due process requirements "can rarely be considered clearly established at least in the absence of closely corresponding factual and legal precedent." *Brewster*, 149 F.3d at 983 (citations and internal quotation marks omitted).

As no case decided by the Supreme Court resembles this case, Shinault directs our attention to *Quick v. Jones*, 754 F.2d 1521 (9th Cir. 1985), as the authority placing this question beyond debate. There, a Washington state prisoner on furlough caused damage to a parole officer and sheriff's belongings while fleeing. *Quick*, 754 F.2d at 1522. At a disciplinary hearing, Quick was directed to pay $66 in restitution. *Id.* at 1522–23. Quick appealed the order to the prison superintendent who affirmed, and funds were withdrawn from the account and transferred to the two officials. *Id.* We decided in these circumstances that a pre-deprivation hearing was required prior to the "permanent and final withdrawal of money . . . ." *Id.* at 1523.

Numerous material differences distinguish *Quick*. The deprivation in Quick's case was final and permanent, whereas

here state officials only froze Shinault's account pending the outcome of proceedings. The state in *Quick* did not hold a hearing assessing liability for the damages prior to withdrawing funds from his account. In contrast, ODOC held a hearing assessing liability prior to withdrawing Shinault's funds. Lastly, Shinault's account was restricted pursuant to a comprehensive scheme to recoup incarceration costs, while *Quick*'s account was debited to provide restitution. Given these differences, we are unable to say that *Quick* is "closely corresponding factual and legal precedent." *Brewster*, 149 F.3d at 983.

In addition, qualified immunity is appropriate because some courts have declined to require a pre-deprivation hearing in analogous cases, albeit involving significantly smaller charges to inmate accounts, which shows that the right was not clearly established at the time of conduct. The Sixth Circuit held that per-diem deductions totaling $20 and $110.27 required only post-deprivation process. *Sickles v. Campbell Cnty., Ky.*, 501 F.3d 726, 730–32 (6th Cir. 2007). Similarly, the Third Circuit found that a $10 per-day charge, totaling $4,000, did not require pre-deprivation process. *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 421–22 (3d Cir. 2000); *accord Slade v. Hampton Roads Reg'l Jail*, 407 F.3d 243, 253–54 (4th Cir. 2005) (no pre-deprivation process needed for $1 per-day deduction).[6]

Given the absence of precedent establishing a state's obligation to provide a pre-deprivation hearing in these

---

[6] The most recent appellate court decision on point required a pre-deprivation hearing, but that case was decided long after ODOC officials froze Shinault's assets. *Montanez v. Sec'y Pa. Dep't of Corr.*, 2014 WL 5155040, at *7–8 (3d Cir. Aug. 15, 2014).

circumstances, the right was not clearly established at the time of the conduct. *Quick* is distinguishable enough from this matter, and several decisions from our sister circuits have held that post-deprivation process suffices, even for final withdrawals of assets.[7]

## III.    Eighth Amendment

Shinault contends that the freeze and withdrawal of funds constitutes deliberate indifference to his medical needs under the Eighth Amendment because he intended to use the funds to secure medical treatment following release from incarceration. The district court granted defendants' motion for summary judgment on the claim, ruling that there was no Eighth Amendment violation because the withdrawal was a reimbursement rather than a punishment, defendants provided adequate medical care, and the record did not show that Shinault would be unable to access medical care after release. We affirm.

The Eighth Amendment's prohibition on cruel and unusual punishment obligates the government to "provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). "[D]eliberate indifference to a prisoner's serious illness or injury states a cause of action under [Section] 1983." *Id.* at 105; *see also Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). In addition to showing a serious medical need, a plaintiff must prove that prison officials were aware

---

[7] Qualified immunity does not apply to claims for declaratory or injunctive relief. *Hydrick v. Hunter*, 669 F.3d 937, 939–40 (9th Cir. 2012). As Shinault disclaimed an injunctive remedy during oral argument, his due process claim is dismissed on summary judgment.

of the condition and deliberately denied or delayed care in order to prevail on an Eighth Amendment claim. *See Farmer v. Brennan*, 511 U.S. 825, 836–37 (1994). As with the procedural due process claim, Shinault was required to prove that the right was clearly established at the time of the conduct.

Assuming that Shinault's diabetes was a significant medical condition and that prison officials were aware of the condition, no authority supports the notion that freezing or withdrawing funds from an inmate account constitutes deliberate denial of care under the Eighth Amendment. The state is obligated to provide diabetes treatment to inmates in custody, *Lolli v. Cnty. of Orange*, 351 F.3d 410, 420 (9th Cir. 2003), and in certain circumstances to provide medication covering a "transitional period" following release. *Wakefield v. Thompson*, 177 F.3d 1160, 1164 (9th Cir. 1999) (ignoring instructions of physician constitutes interference with medical care). The right to medical care has never shielded an inmate's assets because they could potentially be used for medical purposes after release from incarceration, and we decline to do so here.

No issue of material fact indicates that Shinault has a valid claim under the Eighth Amendment. Prison officials did not deprive Shinault of care during his period of incarceration, and he received a sixty-day supply of medication upon release. Thus, we affirm the district court on the Eighth Amendment claim.[8]

---

[8] We could also affirm on the basis of qualified immunity because defendants did not have notice that they violated a constitutional right. A number of courts have rejected Eighth Amendment challenges to various fees charged to inmates, although none of those decisions were exactly on

## CONCLUSION

For these reasons, we affirm the district court's grant of summary judgment on both claims. While we hold that a state must provide a pre-deprivation hearing prior to freezing substantial inmate assets, we ultimately affirm the district court on the due process claim because that right was not clearly established at the time of ODOC's actions.

**AFFIRMED.**

point. *See, e.g.*, *Poole v. Isaacs*, 703 F.3d 1024, 1027–28 (7th Cir. 2012); *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 408 (9th Cir. 1985); *Gardner v. Wilson*, 959 F. Supp. 1224, 1228 (C.D. Cal. 1997).