**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MARTINO RECCHIA, *Plaintiff-Appellant*, v. CITY OF LOS ANGELES DEPARTMENT OF ANIMAL SERVICES, North Central Animal Care Center; RODRIGUEZ, ACO, (Activity No. A11-031309), in her individual capacity; R. WEEKLEY, ACO, (ID No. 0999082) in his individual capacity, *Defendants-Appellees.* | No. 13-57002  D.C. No. 2:12-cv-07468-DDP-MRW  OPINION |

Appeal from the United States District Court
for the Central District of California
Dean D. Pregerson, District Judge, Presiding

Argued and Submitted December 6, 2017
Pasadena, California

Filed May 1, 2018

Before:  Kim McLane Wardlaw and Ronald M. Gould,
Circuit Judges, and Raner C. Collins,[*] Chief District Judge.

Opinion by Judge Gould

---

**SUMMARY[**]**

---

**Constitutional Law**

In an action concerning the warrantless seizure of
Martino Recchia's twenty birds and euthanization of all but
two of the birds, the panel (1) affirmed the district court's
summary judgment on Recchia's Fourteenth Amendment
claim against Los Angeles Department of Animal Control
officers and state law claims as to all defendants; and
(2) vacated summary judgment on Fourth Amendment
claims against the officers and constitutional claims against
the City of Los Angeles.

Concerning Recchia's claim that the Officers violated
his Fourth Amendment rights, the panel held that there was
a genuine factual dispute about whether Recchia's healthy-
looking birds posed any meaningful risk to the other birds or
humans at the time they were seized.  The panel affirmed the
dismissal in part as to the seizure of the birds that appeared
sick, but vacated and remanded in part as to the seizure of
any birds that were wholly healthy in outward appearance.

---

[*] The Honorable Raner C. Collins, Chief United States District
Judge for the District of Arizona, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It
has been prepared by court staff for the convenience of the reader.

The panel instructed the district court on remand to consider in the first instance whether the Officers were entitled to qualified immunity for any potential constitutional violation.

Concerning Recchia's claim that the Officers violated his Fourteenth Amendment procedural due process rights by denying him a hearing before taking and destroying his healthy-looking birds, the panel held that to the extent that Recchia argued that he was denied a meaningful post-seizure hearing due to the euthanization of the birds, the district court properly granted summary judgment to the Officers because neither of the Officers was involved in the decision to euthanize the birds. The panel further held that the Officers did not violate Recchia's procedural due process rights when they seized his birds without a pre-seizure hearing because California Penal Code § 597.1 provided for adequate process. The panel noted that it did not matter whether Recchia's birds were properly seized under the statute or whether there was an emergency.

The panel vacated summary judgment in favor of the City on Recchia's constitutional claims. The panel instructed the district court on remand to consider whether to grant Recchia permission to amend his complaint under Fed. R. Civ. P. 15 and 16 to assert his theory of municipal liability.

The panel affirmed the district court's summary judgment to defendants on Recchia's state tort law claims based on events tied to the seizure of the birds. The panel held that discretionary immunity shielded the defendants from liability.

**COUNSEL**

Matthew B. Summers (argued) and Michael Shipley, Kirkland & Ellis, Los Angeles, California, for Plaintiff-Appellant.

Matthew A. Scherb (argued), Deputy City Attorney; Blithe S. Bock, Assistant City Attorney; Michael N. Feuer, City Attorney; Office of the City Attorney, Los Angeles, California; for Defendants-Appellees.

**OPINION**

GOULD, Circuit Judge:

After two Los Angeles Department of Animal Control Officers (the "Officers") discovered that Martino Recchia was keeping twenty birds in boxes and cages on the sidewalk where he lived, the Officers seized the birds without a warrant. Before a hearing was held on the seizure, a City of Los Angeles (the "City") veterinarian euthanized all but two of the birds. Recchia then sued the City and the Officers (collectively, "Defendants"), bringing claims for violations of the Fourth Amendment and Fourteenth Amendment, as well as claims for state law tort violations. Recchia also asserted a claim for municipal lability against the City on the constitutional claims pursuant to *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), and against the City on the state law claims based on California Government Code § 815.2. The district court granted summary judgment for the Defendants on all claims.

We affirm in part on issues including dismissal of the Fourteenth Amendment due process claim against the

Officers and dismissal of the state law claims. But on the Fourth Amendment claim challenging the seizure of Recchia's birds, we vacate and remand because we conclude that genuine disputes of material fact now preclude summary judgment on the question of whether there was a constitutional violation. We instruct the district court to consider in the first instance whether the Officers are nonetheless entitled to qualified immunity because any constitutional violation was not clearly established at the time it was committed. We also vacate summary judgment on the Fourteenth Amendment claim against the City and instruct the district court to consider in the first instance whether Recchia should be allowed to add a new theory of *Monell* liability at this juncture.

# I

In late 2011, Martino Recchia was homeless and living on the streets of Los Angeles with his twenty pet birds. Eighteen of the birds were pigeons and Recchia also had a crow and a seagull. Recchia kept these birds in twelve to fourteen cardboard boxes and cages, which were covered with blankets and towels.

On November 3, 2011, Los Angeles County Animal Control Officer Robert Weekley came to investigate Recchia's campsite in response to complaints about a homeless man with birds. Officer Weekley told Recchia that he was going to look through Recchia's boxes and containers. Recchia agreed to the inspection and admitted to the Officer that he was keeping some pigeons and a crow in the boxes.

Officer Weekley then looked through the boxes. Los Angeles County Animal Control Officer Yvonne Rodriguez soon arrived to assist him. All the birds had food and water.

However, the birds were maintained in areas too small for them to be able to fly around, the newspaper lining the floors was wet, and the cages and boxes were covered with feces.[1]

Several birds were in dire physical condition. One pigeon had a baseball-sized tumor protruding from its abdomen and extensive feather loss. Another pigeon had tremors and continually walked in circles. Another pigeon had a shriveled, non-functional right eye. Still another pigeon had contorted legs, feather loss, and could not walk or fly. Some birds had wobbling necks or necks in unusual positions. Several birds were missing toes or toenails, or had very long toenails that were curled in circles. Many birds had overgrown beaks. Recchia states that he rescued many of these birds and kept them in the same or better condition than that in which he had found them. However, it cannot be doubted on this record that many of the birds were deformed, distressed or diseased. On the other hand, eight of the pigeons showed no signs of injury or disease, and outwardly appeared to be healthy.

Officer Rodriguez photographed the birds and their living conditions, while Officer Weekley spoke with Recchia. Officer Weekley told Recchia that he was going to impound all of the sick or injured birds, and asked Recchia if there was somewhere Recchia could take the pigeons without visible injuries or illnesses to get them off the street. Recchia told Officer Weekley that he had a friend in the Silverlake neighborhood of Los Angeles and that he could

---

[1] Recchia argues that the birds were housed in better or different conditions than described by the Defendants. But we credit the photos taken of the birds at Recchia's campsite because the validity of those photos is uncontested. *See Scott v. Harris*, 550 U.S. 372, 380–81 (2007) (holding that a videotape of undisputed validity should be treated as providing undisputed facts at summary judgment).

take the birds to that friend's house.  However, Recchia could not provide his friend's name or address.

Officer Weekley then decided to impound all of the birds, given that Recchia could not verify that the friend's home in Silverlake would meet the municipal code requirement that unpermitted wild birds must be housed at least 50 feet from the bird owner's dwelling and 150 feet from all other dwellings.  *See* LAMC §§ 53.59, 53.71. Officer Weekley was also concerned, given the lack of detail Recchia had provided, that the birds would remain in squalor on the public sidewalk if left with Recchia.  And Officer Weekley did not think that Recchia could adequately care for the birds.

The Animal Control Officers then impounded the birds.[2] Recchia was also given a "Post-Seizure Hearing Notice," which informed him that he had ten days to request a post-seizure hearing.

The Animal Control Officers then took the birds to the North Central Care Center (the "Care Center").  The next day, a city veterinarian, Dr. Steven Feldman, examined the birds.  He determined that the crow and the seagull should be sent to wildlife rescue organizations.  But he decided all of the pigeons needed to be euthanized: He determined that many of the birds had serious and incurable illnesses,

---

[2] During the impoundment process, Recchia and Officer Weekley got into an argument, and Officer Weekley contends this escalated into an attempt by Recchia to punch him in the back of the head.  Recchia states he merely attempted to tap Officer Weekley on the shoulder, and that Officer Weekley responded by attempting to wrestle Recchia to the ground.  In any event, the Los Angeles Police Department was called, and police officers detained Recchia while the Animal Control Officers finished impounding the birds.  Recchia was then released.

including symptoms of various bacterial or viral diseases, and that it was likely that even those birds without outward signs of illness carried pathogens. However, Dr. Feldman did not perform blood tests on the birds because the Care Center had a policy of not testing birds for illness unless it was a matter of public health importance. And he determined that the present circumstances did not rise to that threshold.

On November 7, 2011, four days after the seizure, Recchia filed a request for a post-seizure hearing. The hearing was held the next day. The hearing officer found that the seizure was justified under California Penal Code § 597.1(a)(1), which requires officers to seize animals kept in public spaces without proper care and attention if the officers have a "reasonable" belief that "very prompt" action is required to protect the health and safety of the animal or others. At this hearing, Recchia learned for the first time that all of his pigeons had been euthanized.

Recchia then sued the Animal Control Officers and the Los Angeles Department of Animal Services, *pro se*, alleging Fourth and Fourteenth Amendment violations under 42 U.S.C. § 1983, including a *Monell* claim against the Department of Animal Services,[3] and state tort law claims for conversion, negligent infliction of emotional distress, and intentional infliction of emotional distress.

The district court adopted the magistrate judge's report and recommendation and granted summary judgment to the Defendants. Through the report and recommendation, the

---

[3] The district court treated the naming of the Department of Animal Services as though Recchia had named the City, which Defendants have not contested.

district court noted that Recchia had offered no medical or veterinary evidence as to the birds' condition. It stated that exigent circumstances justified the seizure and destruction of the birds, and so found no violation of Recchia's constitutional rights. The district court granted summary judgment to the City, finding Recchia had failed to show there was any City policy that had led the Animal Control Officers to act in a manner that injured Recchia. Finally, the court granted summary judgment to the Defendants on Recchia's state tort law claims, holding that there was no evidence that the Defendants had acted wrongfully. Finding for the Defendants on other grounds, the district court did not reach the Defendants' qualified immunity defense or their other affirmative defenses. Recchia appeals.

## II

We have jurisdiction under 28 U.S.C. § 1291. We review a district court's grant of summary judgment de novo. *Leever v. Carson City*, 360 F.3d 1014, 1017 (9th Cir. 2004). In evaluating a summary judgment ruling, we view the evidence in the light most favorable to the nonmoving party, and assess "whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law." *Id.*

## III

The Fourth Amendment protects, among other things, a person's right not to have their property unreasonably seized by the government. *United States v. Place*, 462 U.S. 696, 700 (1983). Homeless people living on the street enjoy the protection of the Fourth Amendment. *Lavan v. City of L.A.*, 693 F.3d 1022, 1029 (9th Cir. 2012). And Defendants have agreed for the purposes of this appeal that Recchia had a

property interest in his pigeons. **4** The seizure of a homeless person's property implicates important Fourth Amendment concerns.

Recchia argues that in seizing his birds without a warrant, the Officers violated his Fourth Amendment rights. At oral argument and in his briefing on appeal, Recchia argued only that the seizure of his healthy birds was a violation of his constitutional rights, although in his complaint Recchia sought damages for the seizure of all of his birds.

"Because warrantless searches and seizures are *per se* unreasonable, the government bears the burden of showing that a warrantless search or seizure falls within an exception to the Fourth Amendment's warrant requirement." *United States v. Cervantes*, 703 F.3d 1135, 1141 (9th Cir. 2012). The defendants here invoke the exigent or emergency circumstances exception to justify the seizure. The exigent circumstances exception allows warrantless searches and seizures when an emergency leaves police insufficient time to seek a warrant. *See Birchfield v. North Dakota*, 136 S. Ct. 2160, 2173 (2016). Under this exception, for example, the police need not wait to get a warrant if there is an urgent need

---

**4** Specifically, defendants have agreed "[f]or the purposes of this appeal, there is no dispute there can be some property interest in pigeons." Accordingly, here we treat Recchia as having a property interests in the pigeons. However, in a case where the issue was properly raised for decision, there would be a substantial issue whether a person can have a property interest in wild animals such as pigeons, raccoons, or coyotes, to name a few. *See Bilida v. McCleod*, 211 F.3d 166, 173 (1st Cir. 2000); *see also* Cal. Fish & Game Code § 2000 (prohibiting the taking of a wild bird except as provided for in the California Fish and Game Code).

to provide aid or if there is concern evidence might be destroyed in the time it would take to get a warrant. *Id.*

In evaluating whether the circumstances justified an official in acting without a warrant, we review the "totality of the circumstances." *McNeely*, 569 U.S. at 151. Here, the City argues that the seizure was justified because the birds were being held in unsanitary conditions, and it was "untenable" for both the birds' health and for the health of other animals and the public for the birds to remain on the street in those conditions. Recchia argues that any public health threat was too speculative to justify seizing the birds, and that Officer Weekley's initial willingness to allow Recchia to take the healthy birds to a friend's house demonstrates that there was no emergency.

There is no question about whether the emergency exception can be applied to animal workers who seize an animal in a true emergency setting. For example, if animal workers in an urban setting confront an obviously diseased or ill animal living in foul conditions that may be causing or compounding the animal's suffering, whether a bird or a dog or a cat, those workers have the right to seize the animal without getting a warrant. There is little preexisting judicial precedent on this subject. But, in the Sixth Circuit case of *United Pet Supply, Inc. v. City of Chattanooga*, 768 F.3d 464 (6th Cir. 2014), animal control workers were confronted with a situation where a pet store owner had maintained premises so hot and so unventilated that a puppy had died. *Id.* at 473–75. In that context, the court held that the workers could seize animals from the pet store without a warrant. *Id.* at 490.

Other obvious examples come to mind. For example, if workers saw a dog foaming at the mouth, they would not have to pause to get a warrant before trying to get the dog

off the street because of the risks of a rabid dog biting another animal or a person.  Though less dramatic, there are similar issues with diseased cats or birds.  There will always be the problem that if a diseased animal with a communicable disease is allowed to mingle with other animals, it may transmit disease to them.  A disease can spread quickly, maybe as fast as lightning, leaving human health care or animal control workers with only a limited ability to control it.  Officers concerned with human or animal safety should not have to pause to obtain a warrant if they are reasonably concerned that a significant spread of illness might be caused by an infected animal.  Similarly, if health inspection workers see evidence of rodent infestation in a restaurant, they need not pause to get a warrant before taking corrective action to protect the public.

If all the birds maintained by Recchia had been unhealthy or sick in appearance, we think their entire seizure would pose no significant constitutional issue, and clearly would not offend the Fourth Amendment because of the scope of the emergency exception to the warrant requirement and the need to seize the birds to end their suffering and prevent transmission of illness.  However, the crux of the problem here is that not all of the birds appeared to be sick, in fact eight birds appeared outwardly healthy.  And so we are confronted with a factual issue about whether the exigent circumstances exception applies as to the seizure of the healthy-looking birds kept by Recchia in this case.

On the one hand, as to considerations suggesting there was no urgent need to seize the birds, there was substantial evidence that the healthy looking birds should have been no cause for concern.  Officer Weekley's initial willingness to leave the healthy birds with Recchia, if Recchia could relocate them in a way that complied with municipal law,

counsels against finding that an emergency existed here.  *See Rogers v. Cty. of San Joaquin*, 487 F.3d 1288, 1295 (9th Cir. 2007) (holding that an official's initial determination there was no need for a seizure "militates against a finding of exigency.").

Although the City argues that Dr. Feldman's conclusion that the birds potentially carried disease demonstrates that there was a grave risk that required the birds' seizure, we note that Dr. Feldman explained that if birds "may be harboring a potentially dangerous human contagious disease or may be exhibiting signs indicative of an epidemic," "the Care Centers will then incur the expense of performing blood work and lab tests" on the birds.  But here Dr. Feldman "did not feel that the pathology manifested in [Recchia's] pigeons was of a most serious caliber to warrant that."  Also, in assessing reasonableness, we look at what was known to the officers at the time of seizure.  *United States v. Licata*, 761 F.2d 537, 543 (9th Cir. 1985).  Here, at that time, the Officers did not have the benefit of Dr. Feldman's opinion and there is no evidence that the Officers knew facts supporting the view that the healthy-looking pigeons carried a disease that was dangerous to humans, such as avian influenza or bubonic plague, or carried a pathogen that might lead to an epidemic in the Los Angeles bird population.[5]

---

[5] Further, there is no evidence concerning how long it would have taken for the Officers to obtain a warrant or concerning the likelihood that the birds that looked healthy would have transmitted any illness in that time.  And the veterinarian did not examine and euthanize the birds until the day after they were seized.  This demonstrates that there was at least some time for the Officers to get a warrant before a medical inspection of the birds could or needed to be made.  We also conclude it was relevant that it was not possible to hold the birds in quarantine at the Care Center, meaning that people and animals were exposed to the birds

On the other hand, as to considerations suggesting a degree of urgency, there was evidence from which a jury might have determined that all the birds posed some hazard or were in immediate danger justifying a seizure.   We observe that the birds were kept in living spaces inadequate for them to fly, spaces that were dirty and covered with feces. And Dr. Feldman was concerned that even the healthy birds might have pathogens or viruses that might spread to other birds in the wild—although it is unclear what sort of illness they might have had, as Dr. Feldman appears to have just generally listed illnesses that may afflict birds without any analysis to show how Recchia's birds' symptoms linked them to those illnesses.   Further, Officer Weekly did not think Recchia was capable of caring for the birds.

Because of these competing lines of evidence, we hold that there is a genuine factual dispute about whether the healthy-looking birds posed any meaningful risk to other birds or humans at the time they were seized.   Therefore, although we affirm the dismissal in part as to the seizure of the birds that appeared sick, we vacate and remand in part as to the seizure of any birds that were wholly healthy in outward appearance.

On remand, we instruct the district court to consider in the first instance whether the Officers are entitled to qualified immunity for any potential constitutional violation because it was not "clearly established" at the time of the seizure that the warrantless seizure of the birds could be a violation of Recchia's constitutional rights.   *See San Jose*

and whatever theoretical pathogens they may have been carrying for some time after the seizure.  Again, this could lead a jury to conclude that there was no emergency.

*Charter of Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 971 (9th Cir. 2005).

**IV**

Recchia also argues that the Officers violated his Fourteenth Amendment procedural due process rights by denying him a hearing before taking and destroying his outwardly healthy-looking birds.  Recchia appears to be challenging the denial of both a pre- and a post-seizure hearing.   However, Recchia alleges a Fourteenth Amendment violation against only the Officers, not the veterinarian.   To the extent that Recchia argues he was denied a meaningful post-seizure hearing due to the euthanization of the birds, the district court properly granted summary judgment to the Officers because neither of the Officers was involved in the decision to euthanize the birds. Accordingly, the relevant question is whether the Officers violated Recchia's Fourteenth Amendment procedural due process rights because they seized Recchia's birds without a pre-seizure hearing.

Again, the parties agree, for purposes of this appeal, that Recchia had a property interest in his birds.  Once a court has determined that there is a protected interest at stake, the court "must apply the three-part balancing test established in *Mathews v. Eldridge*, 424 U.S. 319 (1979), to determine 'whether a pre-deprivation hearing is required and what specific procedures must be employed at that hearing given the particularities of the deprivation.'"   *See Yagman v. Garcetti*, 852 F.3d 859, 864 (9th Cir. 2017) (quoting *Shinault v. Hawks*, 782 F.3d 1053, 1057 (9th Cir. 2015). Accordingly, we apply the *Mathews* test to determine if Recchia's rights were violated by the absence of a pre-deprivation hearing.   The *Mathews* factors are: "(1) the private interest affected; (2) the risk of erroneous deprivation

through the procedures used, and the value of additional procedural safeguards; and (3) the government's interest, including the burdens of additional procedural requirements." *Id.*[6]

"[T]he relevant inquiry is not whether [Recchia] should have been [afforded a hearing] in this particular case, but whether the statutory procedure itself is incapable of affording due process." *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1318 (9th Cir. 1989) (citing *Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 302 (1981)). Recchia's birds were seized under the auspices of California Penal Code § 597.1(a)(1), which provides for the immediate seizure of animals where "[a]ny peace officer, humane society officer, or animal control officer" has "reasonable grounds to believe that very prompt action is required to protect the health or safety of the animal or the

---

[6] Defendants argue that because exigent circumstances justified seizing the birds, Recchia was not entitled to a pre-seizure hearing. We agree that where exigent or emergency circumstances justify a warrantless seizure there will be no need to have a hearing before a seizure. *See United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 62 (1993) ("Unless exigent circumstances are present, the Due Process Clause requires the Government to afford notice and a meaningful opportunity to be heard before seizing real property subject to civil forfeiture."). However, we have determined that the warrantless seizure was not, on the record presented at summary judgment, justified by exigent circumstances. And so the Defendants' argument on this point is not persuasive.

Defendants also argue that the seizure was proper simply because it was authorized under California law. But the language of California statutes cannot adjust downwards the minimum process due under the Constitution. Accordingly, we proceed through the *Mathews* analysis to determine whether a pre-deprivation hearing was required.

health or safety of others."   Accordingly, the relevant question is whether § 597.1 provides for adequate process, in light of the interests it serves, not whether this particular seizure was proper.

The first *Mathews* factor is the private interest at stake. Here the interest at stake is an animal or pet owner's property interest in their animals and in having the pets or animals with them.**[7]**  Given the emotional attachment between an owner and his or her pet, a pet owner's possessory interest in a pet is stronger than a person's interest in an inanimate object.  *See San Jose Charter of Hells Angels Motorcycle Club*, 402 F.3d at 975.**[8]**

Second, the risk of erroneous deprivation here appears fairly low, generally.  Animal Welfare Officers are executing the seizure and so have some expertise in the factors that would warrant such a seizure.  *See United Pet Supply, Inc.*, 768 F.3d at 486 ("[T]he risk of an erroneous deprivation was low due to the participation of trained animal-welfare officers in the seizure, and there is little value to additional procedural safeguards.").  The statute also authorizes peace officers to execute seizures, which does weigh somewhat against the expertise argument.  But it appears that generally

---

**[7]** We reach no holding here as to whether or not Recchia's pigeons are properly characterized as pets, and we observe that California Fish & Game Code § 2000 (prohibiting the taking of a wild bird except as provided for in the California Fish and Game Code) would seem to suggest otherwise, despite the parties' agreement for purpose of the appeal that Recchia had a property interest in the pigeons.

**[8]** As to the pre-seizure hearing, the fact that the animals were euthanized is not relevant to the analysis, as the euthanization goes to the issue of a post-deprivation hearing.

these seizures will be executed by persons with training in animal welfare and health assessment.

Finally, and we find dispositively here, there is a strong general governmental interest in being able to seize animals that may be in imminent danger of harm due to their living conditions, may carry pathogens harmful to humans or other animals, or may otherwise threaten public safety without first needing to have a hearing on the subject. *See id.* at 487; *see also Hodel*, 452 U.S. at 300 ("Protection of the health and safety of the public is a paramount governmental interest which justifies summary administrative action.").[9]

It does not matter whether Recchia's pigeons were properly seized under the statute or whether there was an emergency here. *See Hodel*, 452 U.S. at 302 ("The relevant inquiry is not whether a cessation order should have been issued in a particular case, but whether the statutory procedure itself is incapable of affording due process."); *Soranno's Gasco, Inc.*, 874 F.2d at 1318 ("We reject Gasco's argument that due process was violated because no immediate threat to public health was involved in this particular situation."). For the purposes of the Fourteenth Amendment analysis, we are not assessing whether this particular seizure was proper, but instead whether the statute provides due process. *See Hodel*, 452 U.S. at 302. We hold

---

[9] Additionally, the statute entitles an animal owner to a post-deprivation hearing, allowing the animal owner to challenge the seizure and attempt to regain the animal while the suspected public safety threat is neutralized. *See* Cal. Penal Code § 597.1(f). The presence of some opportunity to challenge the seizure further supports the conclusion that this statute does not violate due process. *See Hodel*, 452 U.S. at 302–03. Of course, Recchia's post-seizure hearing could do him no good here because his birds were already dead, but that issue is not now properly before us.

that it does and so affirm the district court's grant of summary judgment on the Fourteenth Amendment claim as to the Officers.

## V

Recchia asserts that the district court should not have granted summary judgment on the *Monell* claim because the City's policy of not requiring blood tests before euthanizing birds led to a violation of Recchia's constitutional rights. Defendants argue that Recchia waived this argument because he did not raise it to the district court. Recchia tacitly concedes that this is true. However, he asks us to exercise our discretion to allow this new argument, contending that the Defendants will not be prejudiced by allowing him to raise this new theory and that it would cause manifest injustice to refuse to hear his new argument on the *Monell* claim.

We may "review an issue not raised nor objected to prior to appeal if necessary to prevent manifest injustice." *Retail Flooring Dealers of Am., Inc. v. Beaulieu of Am., LLC*, 339 F.3d 1146, 1150 n.5 (9th Cir. 2003). Recchia has been *pro se* for much of this litigation and so should be afforded some leniency from the generally strict rules against raising issues or theories late.

Because we remand this case, we also instruct the district court to consider whether to grant Recchia permission to amend his complaint under Federal Rules of Civil Procedure 15 and 16 to assert this theory of municipal liability.[10] We vacate summary judgment in favor of the City on Recchia's

---

[10] We express no view on whether he should prevail on that theory of municipal liability, which has not been tested in the district court.

constitutional claims so that the district court can consider this question.

## VI

Recchia asserts state tort law claims based on events tied to the seizure of the pigeons.  Under California law, public entities are liable for violation of state law only as provided by statute.  *Eastburn v. Reg'l Fire Prot. Auth.*, 31 Cal. 4th 1175, 1183 (2003).  California's Government Code grants public entities and their employees several immunities, including discretionary immunity, which Defendants contend is applicable here.

Discretionary immunity applies to shield a California public employee, and thereby his or her employer, *see* Cal. Gov't Code § 815.2 (b), from liability for state law violations when an injury results "from [the employee's] act or omission where the act or omission was the result of the exercise of the discretion vested in [the employee], whether or not such discretion be abused."  *Id.* § 820.2.  "The immunity applies even to 'lousy' decisions in which the worker abuses his or her discretion."  *Christina C. v. Cty. of Orange*, 220 Cal. App. 4th 1371, 1381 (2013).  But "to be entitled to immunity the state must make a showing that such a policy decision, consciously balancing risks and advantages, took place."  *Johnson v. State*, 69 Cal. 2d 782, 794 n.8 (1968).

Here, the Officers seized the pigeons under California Penal Code § 597.1(a)(1), which provides, in relevant part, that "when [an] officer has reasonable grounds to believe that very prompt action is required to protect the health or safety of the animal or the health or safety of others, the officer shall immediately seize the animal."  Recchia argues that there is nothing discretionary about this statute, as it

dictates that officers "shall" seize an animal. But Recchia's argument entirely misses the point.

To seize the birds in this case, the officers had to first make a discretionary decision that very prompt action was required to protect the health or safety of the birds or of others. In practice, each officer will be making discretionary decisions about what are "reasonable grounds" to take prompt action to assess what to do in any given situation. Because individual officers will be making assessments of the situation and of the relevant considerations and dangers in determining the best outcome, as the Officers did here, deciding whether to seize animals under § 597.1(a)(1) clearly represents an exercise of discretion. *See also Christina C.*, 220 Cal. App. 4th at 1381 (finding that social workers have discretionary immunity for their decisions to remove children from the children's homes). We affirm the district court's decision to grant summary judgment to Defendants on Recchia's state law claims.

## VII

We take seriously the health and safety interests raised by Defendants here. Animals can carry dangerous pathogens that in some cases can be harmful to humans or to other species of animals. Whenever government officials have grounds to think that an animal may transmit a dangerous disease in the time it might take to get a warrant, the Fourth Amendment will not block an immediate seizure of that animal. Nor will officers violate an animal or pet owner's constitutional rights where the officers take animals to protect them from some immediate danger in their living situation. But here there are disputes of fact about the health risks that the outwardly healthy-looking birds posed.

We AFFIRM summary judgment on the Fourteenth Amendment claim against the Officers and the state law claims as to all Defendants and VACATE summary judgment on the Fourth Amendment claims against the Animal Control Officers and as to Recchia's constitutional claims against the City, with instructions to the district court to consider in the first instance whether the Officers are entitled to qualified immunity and whether Recchia should be allowed to amend his complaint to add his new theory of municipal liability.

**AFFIRMED** in part; **VACATED** in part; **REMANDED** with instructions.