# United States Court of Appeals
### For the Eighth Circuit

———————————————

No. 25-1076

———————————————

reVamped LLC, a Minnesota limited liability company; Heliocentrix LLC, a
Minnesota limited liability company; Tammy Grubbs; Vanda Smrkovski

*Plaintiffs - Appellants*

v.

City of Pipestone, a Minnesota municipality; Doug Fortune, in his individual and
official capacities

*Defendants - Appellees*

————————

Appeal from United States District Court
for the District of Minnesota

————————

Submitted: October 22, 2025
Filed: December 23, 2025

————————

Before COLLOTON, Chief Judge, LOKEN and BENTON, Circuit Judges.

————————

BENTON, Circuit Judge.

Douglas E. Fortune, building administrator for the City of Pipestone, closed
the Calumet Inn from March 10 to April 30, 2020. Tammy Grubbs; reVamped,
LLC; Vanda Smrkovski; and Heliocentrix, LLC (collectively, the "Inn Owners")
sued the City and Fortune alleging that the closure order violated their Fourteenth
Amendment procedural due process rights and was an uncompensated regulatory

taking in violation of the Fifth Amendment. The district court[1] granted summary judgment to the City and Fortune. The Inn Owners appeal. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

The Inn has a history of disrepair causing safety risks. On December 18, 2017, a window fell off. On January 2, 2018, a 15-pound stone fell from it. Fortune barricaded the sidewalk below. By January 9, the Inn was on Fortune's "blighted list." He threatened to close the Inn on May 24 because necessary repairs to its walls and windows had not been made. He again threatened to close it on August 21 because repairs had still not been made. The Inn finally made the repairs with help of a financial grant from the City, avoiding emergency closure.

On November 13, 2019, deputy fire marshal George E. Shellum did an inspection of the Inn, finding nine fire code violations. He notified the Inn's staff of those violations, with a deadline for compliance, in an inspection order. On January 2, 2020, a fire broke out in a guest's room. Sprinklers did not activate. Two children were there but were not hurt. The Inn did not comply with the inspection order by the deadline of February 13.

On March 6, health inspector Jason Kloss notified Grubbs, the Inn's equitable owner, that Shellum would do a follow-up fire inspection on March 9. Kloss mentioned the fire and the overdue items from the inspection order. Though Grubbs protested she did not know about the inspection order, Kloss warned her that failure to comply with it by March 9 would result in emergency closure of the Inn.

On March 9, Shellum, Kloss, and Fortune inspected the Inn. Five of the nine violations in the inspection order had not been fixed. Shellum documented eight new violations. The next day, Fortune issued the closure order that

---

[1]The Honorable Jeffrey M. Bryan, United States District Judge for the District of Minnesota.

-2-

"CONDEMNED" the Inn pending resolution of the fire code violations and other safety issues. Fortune later explained that during the second inspection, he observed safety hazards that "endangered life" and left only two options: "Remove the hazard or remove the occupants from the hazard." He said: "That's exactly what I did. I removed the occupants."

On March 20, the Inn Owners demanded that the City Council reverse the closure order or hold a hearing. They reiterated those demands on March 23. On April 8, Fortune wrote Grubbs that, because of her efforts to comply with the inspection orders, he would lift the closure order *if* she fixed four of the "most imminent and compelling" safety hazards. On April 13, the City advised the Inn Owners that the City Council could not hold a timely appeal hearing because of the COVID-19 pandemic. The City also advised them to file an appeal with the State Building Code Appeals Board. The Inn Owners prepared an appeal on April 28 but never submitted it. On April 30, Fortune rescinded the closure order because Grubbs had satisfied the requirements in his April 8 letter.

Though Fortune had rescinded the closure order, Kloss required the Inn to remain closed until Grubbs fixed all outstanding fire code violations. She did so by November 5. The Inn operated until May of 2022 when it closed permanently.

The district court granted summary judgment to the City and Fortune. The Inn Owners appeal, arguing: (1) The closure order violated their Fourteenth Amendment procedural due process rights; (2) qualified immunity should not shield Fortune in his individual capacity; and (3) the closure order was an uncompensated regulatory taking in violation of the Fifth Amendment. "This court reviews de novo a grant of summary judgment." ***Torgerson v. City of Rochester***, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." ***Id.*** at 1042 (citation and internal quotation marks omitted).

## II.

The Inn Owners argue that the City and Fortune, in his official capacity, violated their Fourteenth Amendment procedural due process rights. *See* **42 U.S.C. § 1983** (permitting recovery against local government employees who violate constitutional rights when acting in their official capacity); **Monell v. Department of Soc. Servs.**, 436 U.S. 658, 694 (1978) (holding that a local government may be liable if a policy or custom causes a constitutional violation).

"Procedural due process claims require a two-step analysis. Initially, a plaintiff must demonstrate that the state deprived him of some 'life, liberty, or property' interest. If successful, the plaintiff must then establish that the state deprived him of that interest without sufficient 'process.'" **Krentz v. Robertson**, 228 F.3d 897, 902 (8th Cir. 2000), *quoting* **U.S. Const. Amend. XIV, §1**. In determining sufficient process, this court considers (1) the private interest affected; (2) the risk of erroneous deprivation of such interest, including the probative value of substitute or additional safeguards; and (3) the government's interests, including the function involved and the burdens that any additional or substitute procedural requirements would entail. *See* **Mathews v. Eldridge**, 424 U.S. 319, 335 (1976). The inquiry "focuses not on the merits of a deprivation, but on whether the State circumscribed the deprivation with constitutionally adequate procedures." **Parrish v. Mallinger**, 133 F.3d 612, 615 (8th Cir. 1998). *See* **Reed v. Goertz**, 598 U.S. 230, 236 (2023) ("[A] procedural due process claim is not complete when the deprivation occurs. Rather, the claim is complete only when the State fails to provide due process.") (cleaned up) (citation omitted).

Assuming without deciding that the Inn Owners had a protected property interest, the Inn Owners still fail to show an unconstitutional deprivation of their procedural due process rights under the second and third *Mathews* factors.

-4-

## A.

The risk of erroneous deprivation of the Inn Owners' (assumed) property interest was low because the regulations authorizing summary administrative action (1) were specific, and (2) provided for adequate post-deprivation due process. *Hodel v. Virginia Surface Min. & Reclamation Ass'n, Inc.*, 452 U.S. 264, 301–03 (1981). In *Hodel*, the Court held that a law allowing the government to issue immediate cessation orders to mines that posed an "imminent danger to the health and safety of the public" was "specific enough to control governmental action and reduce the risk of erroneous deprivation." *Id.* at 301. Because mine owners were afforded prompt and adequate post-deprivation hearings and the opportunity for judicial review, the law did not violate the Due Process Clause. *Id.* at 303.

Here, Fortune exercised his discretion to temporarily close the Inn under the Minnesota State Building Code, which requires the building administrator to vacate a building if it is "structurally unsafe, not provided with adequate egress, a fire hazard, or otherwise dangerous to human life." **Minn. R. 1300.0180** (2025). This language is "specific enough to control governmental action and reduce the risk of erroneous deprivation." *See Hodel*, 452 U.S. at 301. *See also San Geronimo Caribe Project, Inc. v. Acevedo-Vila*, 687 F.3d 465, 486 (1st Cir. 2012) (holding that a state statute authorizing summary administrative action where "there is imminent danger to the public health, safety and welfare or [in situations] which require immediate action by the agency" was specific enough to pass constitutional muster); *Recchia v. City of Los Angeles Dep't of Animal Servs.*, 889 F.3d 553, 561 (9th Cir. 2018) (same for a state statute authorizing immediate seizure of animals where an officer has "reasonable grounds to believe that very prompt action is required to protect the health and safety of the animal or the health and safety of others").

As district court correctly noted, the Inn Owners had at least three avenues to appeal the closure order: the City Council, the State Building Code Appeals Board, and certiorari review. *See* **Pipestone, Minn., CODE § 151.11** (2025) (detailing the process by which an aggrieved party may file an application for appeal with City Council and seek certiorari review); **Minn. R. 1300.0230** (2025) (providing for a

direct appeal to the State Building Code Appeals Board); **Minn. Stat. § 606.06** (2022) (authorizing writs of certiorari to review administrative orders).

The Inn Owners argue that they tried to resolve the issue through the City Council but encountered delay and confusion. Assuming without deciding that they submitted a "properly completed" application for review to the City Council and it failed to hold a hearing within 10 working days, the Inn Owners failed to appeal directly to the State Building Code Appeals Board. *See* **Minn. R. 1300.0230** (2025) ("Appeals hearings must occur within ten working days from the date the municipality receives a properly completed application for appeal. If an appeals hearing is not held within this time, the applicant may appeal directly to the State Building Code Appeals Board."). They likewise failed to seek a writ of certiorari. *See* **Pipestone, Minn., CODE § 151.11(E)** (2025) ("Any person . . . shall have the right to apply to the appropriate court for a writ of certiorari to correct errors of law."); **Minn. Stat. § 606.06** (2022). The Inn Owners "cannot complain of a violation of procedural due process when [they have] not availed [themselves] of existing procedures." *See* ***Anderson v. Douglas Cnty.***, 4 F.3d 574, 578 (8th Cir. 1993).

B.

The Inn Owners argue they were entitled to more due process before Fortune issued the closure order. But the City and Fortune had a substantial interest in protecting public health and safety. Providing additional pre-deprivation process would have imposed an untenable burden on them.

"[W]here a State must act quickly, or where it would be impractical to provide pre[-]deprivation process, post[-]deprivation process satisfies the requirements of the Due Process Clause." ***Gilbert v. Homar***, 520 U.S. 924, 930 (1997). "Protection of the health and safety of the public is a paramount governmental interest which justifies summary administrative action." ***Hodel***, 452 U.S. at 300. *See* ***Booker v. City of St. Paul***, 762 F.3d 730, 736 (8th Cir. 2014) (holding that a city was justified

in taking a vehicle from a driver suspected of driving under the influence because of the city's substantial interest in public safety).

In *Elsmere Park Club, L.P. v. Town of Elsmere*, 542 F.3d 412 (3d Cir. 2008), the city code inspector condemned apartment buildings immediately after inspection revealed mold contamination that he believed posed a serious health threat to residents. *Id.* at 415. The owner argued that mold contamination was not sufficient to contravene pre-deprivation due process, and the code inspector did not investigate thoroughly enough to justify the emergency action. *Id.* at 418. The Third Circuit disagreed because the code inspector relied on competent evidence to support a reasonable belief that mold contamination was an emergency. *Id.* at 419–20, *adopting the analysis of* **Catanzaro v. Weiden**, 188 F.3d 56, 63 (2d Cir. 1999).

Here, Fortune relied on competent evidence and reasonable belief to temporarily close the Inn based on a threat to public health and safety. Fortune knew the Inn's history of structural safety risks. And by March 10, 2020, he reasonably believed that its fire suppression system had failed in response to a fire. He knew the Inn had not complied with the inspection order for nearly four months. He participated in a follow-up fire inspection that found five overdue compliance items and eight new violations. That inspection showed structural and fire dangers that caused him to exercise his authority to close the Inn rather than "take that chance on the life, safety and health of the occupants of that building."

The Inn Owners complain that the safety issues in the closure order were not emergencies sufficient to circumvent pre-deprivation process, and if Fortune had conducted a more thorough investigation, he would have known that. But "*Hodel* directs [this court] to accord the decision to [issue the closure order] some deference, and not to engage in a hindsight analysis of whether the [Inn] actually created an immediate danger to the public." *See* **Catanzaro**, 188 F.3d at 62. *See also* **Elsmere Park**, 542 F.3d at 420 ("Where government officials are faced with a situation in which a failure to act quickly could have serious health consequences, perfection or near perfection is not the standard."); **Hodel**, 452 U.S. at 302 ("The possibility of

administrative error inheres in any regulatory program; statutory programs authorizing emergency administrative action prior to a hearing are no exception.").

Fortune's justification supports summary administrative action. *See **Hodel***, 452 U.S. at 300. *See also **Ewing v. Mytinger & Casselberry***, 339 U.S. 594, 599–600 (1950) (noting that summary destruction of property without prior notice or hearing for the protection of public health is among "the oldest examples" of permissible government action). Because "swift action [was] necessary to protect the public health and safety," Inn Owners were not entitled to more pre-deprivation process. *See **Hodel***, 452 U.S. at 301. Neither the City nor Fortune, in his official capacity, are liable because "[a]bsent a constitutional violation . . . there can be no § 1983 or *Monell* liability." ***Aden as Tr. for Estate of Aden v. City of Bloomington, Minn.***, 128 F.4th 952, 960 (8th Cir. 2025) (citation and internal quotation marks omitted).

III.

An official is entitled to qualified immunity unless (1) the official violated a statutory or constitutional right and (2) the right was clearly established at the time of the challenged conduct. ***Ambrose v. Young***, 474 F.3d 1070, 1077 (8th Cir. 2007). This court may exercise its discretion to address the second prong first. ***Pearson v. Callahan***, 555 U.S. 223, 236 (2009). Even if the Inn Owners could show that Fortune's conduct violated their procedural due process rights, he is entitled to qualified immunity because the Inn Owners point to no authority that clearly proscribes Fortune's conduct. The district court correctly ruled that Fortune, in his individual capacity, was entitled to qualified immunity.

IV.

Fortune's temporary closure of the Inn did not amount to a regulatory taking proscribed by the Fifth Amendment. A lawful exercise of a state's police power to regulate in the interest of public health and safety is generally not a taking. ***Outdoor Graphics, Inc. v. City of Burlington, Iowa***, 103 F.3d 690, 695 (8th Cir. 1996). "For

-8-

example, the government owes a landowner no compensation for requiring him to abate a nuisance on his property, because he never had a right to engage in the nuisance in the first place." ***Cedar Point Nursery v. Hassid***, 594 U.S. 139, 160 (2021).

Here, Fortune, acting under the Minnesota State Building Code, closed the Inn to preserve public health and safety. The Inn Owners may have been entitled to operate their retail business in the ordinary course, but they were not entitled to be free from temporary enforcement targeting well-documented safety deficiencies.

\* \* \* \* \* \* \*

The judgment is affirmed.

_____