**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 22-6029**

———————

TERRANCE ROBERT HENDERSON,

　　　　Plaintiff - Appellant,

v.

J.A. HARMON, Hearings Officer, Nottoway Correctional Center; CARL MANIS, Warden, Wallens State Prison; KAREN STAPLETON,

　　　　Defendants - Appellees,

and

W.R. HENSLEY, Hearings Officer, Wallens Ridge State Prison; DAVID ZOOK, Warden, Sussex I State Prison; T. LEABOUGH; LT. HUGHES, Lieutenant, Wallens Ridge State Prison; ERNIE WILLIAMS, Counselor, Wallens Ridge State Prison; REYNOLDS, Unit Manager, Wallens Ridge State Prison,

　　　　Defendants.

———————

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk.  Raymond A. Jackson, Senior District Judge.  (2:18–cv–00043–RAJ–DEM)

———————

Argued:  March 22, 2024　　　　　　　　　　Decided:  May 16, 2024

———————

Before GREGORY, WYNN, and HARRIS, Circuit Judges.

———————

Affirmed by published opinion.  Judge Wynn wrote the opinion, in which Judge Gregory and Judge Harris joined.

---

**ARGUED:** A. Spencer Osborne, Alexis M. Parker, WAKE FOREST UNIVERSITY SCHOOL OF LAW, Winston-Salem, North Carolina, for Appellant. Timothy Edward Davis, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees. **ON BRIEF:** John J. Korzen, Jenna M. White, Student Counsel, Appellate Advocacy Clinic, WAKE FOREST UNIVERSITY SCHOOL OF LAW, Winston-Salem, North Carolina, for Appellant. Jason S. Miyares, Attorney General, Maria N. Wittmann, Deputy Attorney General, Theophani K. Stamos, Deputy Attorney General, Diane M. Abato, Senior Assistant Attorney General, Stacie A. Sessoms, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees.

2

WYNN, Circuit Judge:

Plaintiff Terrance Henderson, an inmate within the Virginia Department of Corrections, filed this action seeking to enjoin prison officials from deducting a sum of money from his prison trust account as restitution for an assault he committed on a fellow inmate in 2015 and to compel the return of money already taken. Henderson alleges that the nearly six-year interim between the guilt-finding phase of his disciplinary hearing and his reconvened restitution hearing violates principles of due process.

He now appeals from the district court's order granting summary judgment to Defendants on his 42 U.S.C. § 1983 claim and dismissing his Virginia state-law claim without prejudice. We affirm the district court's disposition of both claims.

I.

On October 27, 2015, the Virginia Department of Corrections ("Department") served Henderson with notice that he would be the subject of a disciplinary hearing in connection with an assault on a fellow inmate that took place about two weeks prior. Henderson and another inmate, J. Womack, were accused of assaulting a third inmate, J. Robinson, severely enough that he needed to be airlifted to the hospital. The hearing was scheduled for November 10, 2015. After service and before the hearing, Henderson submitted requests for documentary evidence and for witnesses to be available at the hearing. Defendant J.A. Harmon, a hearing officer, denied those requests on various grounds, including that the witness requests were untimely.

Harmon conducted the November 10, 2015, disciplinary hearing and found Henderson guilty of an aggravated assault on Robinson. Harmon based her decision on

3

footage showing Henderson and Womack entering and leaving Robinson's cell several minutes before Robinson's cellmate discovered him injured and unresponsive on the floor. As a result of her findings, Harmon imposed on Henderson disciplinary segregation of 30 days, loss of good-time credits of 180 days, and a then-undetermined amount of restitution for Robinson's medical expenses. Harmon told Henderson that the hearing would be reconvened once the restitution amount could be determined.

But shortly thereafter, and without having received a reconvened restitution hearing, Henderson was transferred to another prison facility. On December 30, 2015, the Department sent Henderson written notice that he owed $5,176.19 in restitution for Robinson's medical treatment—equivalent to half of the total amount of "[m]edical [e]xpenses" stated on the notice. J.A. 191.[1] About one week later, the Department withdrew $64.79 from Henderson's inmate account, leaving only a minimal mandatory $5 balance. The Department placed those funds in a holding account to be applied toward the restitution.

Henderson appealed the restitution order to the Department, which provides two levels of appeals for disciplinary offenses: a Level I appeal to the facility unit head, and a Level II appeal to the regional administrator. The Department denied Henderson's Level I and Level II administrative appeals.

In 2018, proceeding pro se, Henderson filed this civil suit in the Eastern District of Virginia against various prison officials, asserting federal claims under 42 U.S.C. § 1983

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

and state claims under Virginia law, each of which alleged violations of due process. The district court dismissed all claims. Dismissal Order at 5, *Henderson v. Harmon*, No. 2:18-cv-43 (E.D. Va. June 4, 2018), ECF No. 5. Henderson appealed, and we vacated the dismissal of his restitution-related due-process claims and remanded for the district court to analyze whether equitable tolling of the relevant statute of limitations during Henderson's administrative appeals made his claims timely. *Henderson v. Harmon*, 750 F. App'x 236, 238 (4th Cir. 2019) (per curiam). On remand, the district court permitted Henderson's claim to proceed against Harmon, Carl A. Manis, and Karen Stapleton ("Defendants"), who are all current or former Department officials.[2] Order at 2–3, *Henderson v. Harmon*, No. 2:18-cv-43 (E.D. Va. Sept. 21, 2020), ECF No. 24. The district court dismissed the claims against all other defendants. *Id.* at 3.

In 2021, the Department decided to voluntarily reconvene Henderson's disciplinary hearing. It held the reconvened hearing on July 23, 2021, at Wallens Ridge State Prison, where Henderson was then housed. During this proceeding, Henderson had the assistance of a staff advisor, and had the opportunity to make a statement. However, the hearing officer was not the same person who had presided over Henderson's original case in 2015 and had little knowledge of the original hearing. In a written decision summarizing the hearing, the Wallens Ridge warden stated that the "sole purpose" of the reconvened phase

---

[2] Though the district court allowed the claims to proceed, it did not explicitly find that equitable tolling during Henderson's administrative appeals brought his claim within the statute of limitations. However, Defendants do not contest this issue, and the matter is non-jurisdictional. *See Day v. McDonough*, 547 U.S. 198, 205 (2006); *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 654 n.8 (4th Cir. 2006). So, we assume that Henderson's claims were timely.

of the hearing "was to inform [Henderson] of the amount of restitution [he] owe[d] with instructions on how to proceed with [his] appeal of that amount should [he] choose to challenge [it]." J.A. 304–05.

The Department presented bills totaling $10,352.38—a $9,389.00 hospital bill plus a $963.38 invoice from the local fire department for transporting the assault victim—and informed Henderson that this total was to be allocated evenly between him and the other assailant. The Department thus notified Henderson that he owed a total of $5,176.19 in restitution (before subtracting the $64.79 that had already been deducted)—the same amount it had given him notice of in 2015.

Henderson unsuccessfully challenged the inclusion of the victim's transportation expenses as against Department policy on medical restitution at the time of his offense. He then submitted a Level I appeal of the restitution finding, which the Department denied. He did not file a Level II appeal.

Defendants moved for summary judgment, and the district court granted their motion. *Henderson v. Harmon*, No. 2:18-cv-43, 2021 WL 6331984, at *1 (E.D. Va. Dec. 20, 2021). The court concluded that Henderson presented no genuine dispute of material fact to show that his federal due-process rights were violated, and further concluded that Defendants were entitled to qualified immunity. *Id.* at *4–6. The court also dismissed Henderson's state-law claim without prejudice, declining to exercise supplemental jurisdiction in the absence of any remaining federal claims. *Id.* at *6.

Henderson appealed, and we appointed counsel to assist with the appeal. This appeal concerns only the amount of restitution, as Henderson previously waived any challenge to the guilt-finding phase of the disciplinary process.

## II.

We first examine the district court's grant of summary judgment to Defendants on Henderson's federal claim alleging a due-process violation pursuant to § 1983. We review a district court's grant of summary judgment de novo. *Incumaa v. Stirling*, 791 F.3d 517, 524 (4th Cir. 2015), *as amended* (July 7, 2015). For the reasons outlined below, we uphold summary judgment in favor of Defendants.

## A.

Before asking if a due-process violation occurred, we must first determine whether the alleged violation implicates a constitutionally protected liberty or property interest. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972). Henderson argues that he has a protected property interest in his prison account fund. We agree.

We have previously held in an unpublished opinion that "[a] prisoner has a protected property interest in his prison trust account."[3] *Burks v. Pate*, 119 F. App'x 447, 450 (4th Cir. 2005) (per curiam). Decisions from several other circuits accords with that position. *E.g.*, *Montañez v. Sec'y Pa. Dep't of Corr.*, 773 F.3d 472, 482 (3d Cir. 2014); *Campbell v.*

---

[3] By contrast, we have previously held that an inmate has no property interest protected under Virginia law in their prison wages, or the interest earned on those wages, because such earnings stem from a statutory grant instead of a common-law right. *See Washlefske v. Winston*, 234 F.3d 179, 185–86 (4th Cir. 2000). Because no party has suggested that Henderson's trust account deposits come from prison wages, we conclude that *Washlefske* does not apply.

7

*Miller*, 787 F.2d 217, 222 (7th Cir. 1986); *Mahers v. Halford*, 76 F.3d 951, 954 (8th Cir. 1996); *Shinault v. Hawks*, 782 F.3d 1053, 1057 (9th Cir. 2015). In fact, other circuits have treated the question as an easy one. *See Quick v. Jones*, 754 F.2d 1521, 1523 (9th Cir. 1985) (finding "no question" that inmate had a "protected property interest" in his prison account); *Campbell*, 787 F.2d at 222 (stating that the matter "is beyond dispute"). Because we see no reason to depart from this uniform treatment, we conclude Henderson has a protected property interest in his prison trust account.

B.

Having established that Henderson has a property interest in his prison trust account, we next consider whether Defendants deprived him of that interest in violation of constitutional due process. In prison disciplinary proceedings, an incarcerated person is entitled to procedural protections, though less than the "full panoply of rights" guaranteed in a criminal prosecution. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). *Wolff* establishes that, at a minimum, an inmate must receive "advance written notice of the claimed violation"; an opportunity "to call witnesses and present documentary evidence"; and a "written statement of the factfinders as to the evidence relied upon and the reasons for the disciplinary action taken." *Id.* at 563, 566.

But procedural errors in prison proceedings are subject to harmless-error review. *Lennear v. Wilson*, 937 F.3d 257, 276 (4th Cir. 2019). To determine whether an error that results in evidence being erroneously excluded in prison proceedings is harmless, "courts must determine whether the excluded evidence could have aided the inmate's defense." *Id.* at 277.

Henderson objects to application of a harmless-error standard, arguing that *Lennear* is limited to procedural errors that occur within a hearing, while the alleged violation here is the *lack* of a timely hearing. We do not read *Lennear* so narrowly. That case held that, "in evaluating whether prison officials' failure to disclose or consider evidence was harmless, courts must determine whether the excluded evidence could have aided the inmate's defense." *Id.* This rule concerns evidence and does not mention hearings. Whether within a hearing or outside one, if an accused inmate has evidence that goes unheard due to an error, we may measure the potential harm of that error. Wherever the error occurs, if there is no potential harm, there can be no remedy.

Henderson also argues that, even if harmless-error review applies, he is not required to show that he was prejudiced by any violation of due process, or at least that prejudice should be presumed after a lengthy delay like the one here. We disagree.

First, Henderson asserts that no case explicitly commands a showing of prejudice in the context of prison disciplinary hearings. But it is impossible to separate prejudice from harmless-error review as Henderson requests; in this context, prejudice is synonymous with harm. *See, e.g.*, *United States v. Olano*, 507 U.S. 725, 734 (1993) ("[A] court of appeals normally engages in a specific analysis of the district court record—a so-called 'harmless error' inquiry—to determine whether the error was prejudicial."); *Lennear*, 937 F.3d at 277 ("[F]ailure to comply with the *Wolff* requirements is harmless when it does not prejudice an inmate's preparation or defense at a hearing." (quoting *Brennan v. United States*, 646 F. App'x 662, 666 (10th Cir. 2016))).

9

Second, Henderson cites cases in which we held that trial delays ranging from several months to several years were presumptively prejudicial. *See, e.g.*, *United States v. Woolfolk*, 399 F.3d 590, 598 (4th Cir. 2005) (seven-month delay from arrest warrant to indictment); *United States v. Lozano*, 962 F.3d 773, 780 (4th Cir. 2020) (six-year delay). But speedy-trial violations are poor analogues for this case, where guilt was swiftly adjudicated and is not challenged at this stage. Criminal defendants awaiting trial must face pretrial restrictions on liberty and risk the loss of exculpatory evidence. *See Barker v. Wingo*, 407 U.S. 514, 532 (1972). These risks are substantially different for persons who are already found guilty of an underlying offense but await a finding on the amount of restitution.

So, we conclude that a harmless-error analysis is appropriate here. To conduct that analysis, we assume without deciding that the nearly six-year delay in convening the restitution phase of Henderson's disciplinary hearing violated due process, and ask whether this delay was harmless by inquiring whether any evidence that "could have aided" Henderson's defense was effectively excluded by the delay.[4] *Lennear*, 937 F.3d at 277.

---

[4] Henderson also suggests that the premature deduction of $64.79 from his account—before the reconvened restitution hearing—prejudiced him because it meant he had no access to those funds for the purchase of "hygiene products, food, writing materials, etc." Opening Br. at 6 (quoting J.A. 202). But while the premature deprivation of funds without due process may constitute a due process violation, at the harmless-error stage, we must ask whether it would have made any difference to the proceeding. And at the reconvened hearing, Henderson challenged only the inclusion of his half of the $963.38 in transportation costs; he did not challenge the inclusion of his half of the $9,389.00 in medical bills. So, even if the restitution hearing had been held promptly, there could have been no dispute that he owed the deducted amount. Nor has he suggested that the premature deduction of funds harmed his ability to mount a defense.

10

Henderson concedes that the 2021 proceeding itself—notwithstanding the long delay in convening it—satisfied *Wolff*'s due-process prescription with respect to the restitution amount. Oral Argument at 40:28–40:35, *Henderson v. Harmon*, No. 22-6029 (4th Cir. Mar. 22, 2024), https://www.ca4.uscourts.gov/OAarchive/mp3/22-6029-20240322.mp3. Thus, we must gauge only the harm of the intervening delay. To do so, we ask if any evidence that could have aided Henderson's defense was available to him in 2015, but not in 2021. We can identify two potential sources of evidence that merit a closer look: Henderson himself, and witnesses who were no longer housed in the same facility.

First, we examine whether nearly six years' time deprived Henderson of potentially helpful evidence within his own memory. Henderson states that by 2021, his recollection of the 2015 events had degraded, and that he could no longer remember enough to challenge the restitution penalty. Defendants counter that the amount of restitution is based on objective billing statements that could not have been called into doubt by anything Henderson could personally have attested to. And Henderson responds that, at a timely hearing, he could have better argued that certain types of costs should be excluded, that he should be charged less than half of the total, or that the total was wrongly calculated.

Henderson's recall of the 2015 events giving rise to the disciplinary proceeding could certainly have been material to his defense during the guilt-finding phase of the proceedings. But that phase was conducted promptly, and we do not see how lost memories would impair Henderson's ability to contest the restitution order alone. The Department determined the restitution amount by totaling the medical bills of the assault victim (Robinson) and dividing the sum evenly between Henderson and the other inmate involved

11

in the assault (Womack). Henderson's recollections could alter neither the numerator nor the denominator of that equation. Henderson was not present when Robinson received treatment for his injuries, and he would have had no basis to contest the validity of the bills from his memory alone. Further, the Department informed Henderson on December 30, 2015, that Robinson's total medical expenses were $10,352.38 and that Henderson's restitution amount was $5,176.19—that is, half of the total. Yet in his Level I appeal, which he filed on February 11, 2016, he did not argue that the amount should have been unequally apportioned between his co-assailant and himself. There is no reason to believe Henderson would have remembered apportionment-altering evidence at a promptly convened restitution hearing when he did not make any such argument in the immediate aftermath of the assault.

As for the Department's inclusion of transportation costs in Henderson's restitution total, that issue presents a question of prison policy. A fresher firsthand account from Henderson could not have aided the Department's interpretation of its own 2015 policy. So, Henderson's fading memory over the six-year period did not harm his ability to present a defense in the restitution hearing.

Second, we must consider how Henderson might have benefited from the presence of witnesses, such as Womack or Robinson, who were out of reach after almost six years. Henderson, having been moved to a different facility after the 2015 hearing, could not call either witness in 2021. And testimony from the other assaulter and the assault victim certainly could have changed the amount of liability assigned to Henderson.

12

But Henderson also lacked the ability to call either witness in 2015. Henderson sought to present testimony from Womack and Robinson at the guilt-finding phase in 2015, but the hearing officer denied the requests as untimely.[5] So, had the restitution finding been made at the original 2015 disciplinary hearing, Henderson still would not have had access to either Womack or Robinson as witnesses. The delay therefore played no role in depriving Henderson of this evidence, and consequently, no prejudice resulted from the delay.

Because we conclude that no additional evidence could have aided Henderson's ability to contest the amount of his ordered restitution, even if the restitution portion of the hearing had been promptly reconvened, we hold that Henderson is not entitled to relief under federal law for a due-process violation.[6]

---

[5] The record shows some troubling inconsistencies with respect to these denials. The Department's procedure requires an inmate to request witnesses within 48 hours of *being served* with notice of the disciplinary hearing. Henderson was served on October 27, 2015, and his witness request forms were dated October 29, 2015. But hearing officer Harmon stated that she denied those requests for being submitted outside of 48 hours from the *hearing*. Harmon thus appears to either have misapplied prison policy or misstated the rationale behind her decision. But that matter is not before us on appeal, so we must accept that Henderson would not have had access to these witnesses even at a timely restitution hearing.

[6] Because we conclude that any due-process error was harmless, we need not consider whether Defendants are insulated from this action by qualified immunity. However, we note that qualified immunity does not apply against the prospective relief Henderson seeks by asking us to enjoin Defendants from making any further deductions from his inmate trust account. *See S.C. Bd. of Dentistry v. FTC*, 455 F.3d 436, 447 (4th Cir. 2006) (noting that qualified immunity does not "operate[] in cases seeking purely equitable relief"). Henderson has foregone any claim for damages in this appeal. Oral Argument at 14:36–14:42.

III.

Henderson also asserts a due-process claim under Virginia state law. Having granted summary judgment to Defendants on the only remaining federal claim, the district court declined to exercise supplemental jurisdiction and dismissed the state-law claim without prejudice. We review a district court's decision to decline to exercise supplemental jurisdiction over state-law claims for abuse of discretion. *PEM Entities LLC v. County of Franklin*, 57 F.4th 178, 181 (4th Cir. 2023). We hold that the district court did not abuse its discretion by declining supplemental jurisdiction in the absence of a viable federal claim.

A district court may exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). But a district court "may decline to exercise supplemental jurisdiction" when it "has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c).

A court has "wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995); *accord United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 196–97 (4th Cir. 2022) ("Because the state-law claim was the only thing left after the dismissal of all the federal-law claims, the district court had the discretion to decline to exercise supplemental jurisdiction over that claim." (citing *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009))). That said, "[g]enerally, when a district court dismisses all federal claims in the early stages of litigation"—e.g., at the summary-

judgment stage—"it should decline to exercise jurisdiction over any remaining pendent state law claims by dismissing those claims without prejudice." *Banks v. Gore*, 738 F. App'x 766, 773 (4th Cir. 2018) (first citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966); and then citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)) (considering a situation where, like here, the district court granted summary judgment on the federal claims); *accord Carnegie-Mellon Univ.*, 484 U.S. at 350 n.7 ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.").

Henderson argues that the district court failed to sufficiently consider the "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy," as prescribed in *Shanaghan*. Opening Br. at 43 (quoting *Shanaghan*, 58 F.3d at 110). But, in its order, the district court acknowledged those factors before stating that it declined to exercise supplemental jurisdiction. Although the court's analysis was brief, we can infer that the court concluded that declining to exercise jurisdiction would not be inconvenient, unfair, or wasteful of judicial resources. We can also verify that it considered the appropriate factors. This is enough to satisfy our abuse-of-discretion review.

## IV.

Incarcerated persons like Henderson have a protected property interest in their prison trust accounts, which attaches constitutional due-process protections. And the nearly

15

six-year delay between the hearing that adjudicated Henderson's guilt and his opportunity to contest the restitution amount raises serious concerns about the availability of evidence and witnesses. Yet even if we assume that this delay violates due process, that error was harmless because no evidence that could have aided Henderson's ability to contest the amount of restitution was lost to time. We thus affirm the district court's grant of summary judgment on Henderson's federal claim.

Without a viable federal claim, the district court had broad discretion about whether to exercise supplemental jurisdiction over the remaining state-law claim. We are satisfied that the court acted within these wide boundaries when it declined to exercise supplemental jurisdiction. Accordingly, we also affirm the district court's dismissal of Henderson's state-law claim.

*AFFIRMED*

16