**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

―――――――――

**No. 23-6824**

―――――――――

DEMMERICK ERIC BROWN, a/k/a Denrick Eric Brown,

        Plaintiff – Appellant,

  v.

KAREN STAPLETON, Disciplinary Unit Manager; L.A. MULLINS, Disciplinary
Hearing Officer; BRETT FARMER,

        Defendants – Appellees,

  and

JOHN DOE, Prison Guard Sergeant,

        Defendant.

------------------------------

PRISON POLICY INITIATIVE,

        Amicus Supporting Appellant.

―――――――――

Appeal from the United States District Court for the Western District of Virginia, at
Roanoke.  Robert S. Ballou, District Judge.  (7:22-cv-00349-RSB-PMS)

―――――――――

Argued:  March 20, 2025                            Decided:  July 1, 2025

―――――――――

Before WYNN, RICHARDSON, and HEYTENS, Circuit Judges.

Vacated and remanded by published opinion.  Judge Richardson wrote the opinion, in which Judges Wynn and Heytens joined.

————————————

**ARGUED:**  Samuel David Kinder Weiss, RIGHTS BEHIND BARS, Washington, D.C., for Appellant.  Graham Keith Bryant, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees. **ON BRIEF:**  Jason S. Miyares, Attorney General, Richard Carson Vorhis, Senior Assistant Attorney General, Andrew N. Ferguson, Solicitor General, Erika L. Maley, Principal Deputy Solicitor General, Michael Dingman, Assistant Solicitor General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees.  Sarah Staudt, PRISON POLICY INITIATIVE, Easthampton, Massachusetts; David M. Zionts, Chris Kimmel, Wesline N. Manuelpillai, Adam W. Mitchell, Rebecca X. DiPietro, COVINGTON & BURLING LLP, Washington, D.C., for Amicus Curiae.

RICHARDSON, Circuit Judge:

Demmerick Brown violated his prison's COVID-19 policy when he removed his face mask to get a shave at the barber shop. As punishment, the prison deducted fifteen dollars from Brown's prison trust account as a fine. The district court concluded that Brown lacked a property interest in the money in his account and dismissed the case. But this Court recently concluded to the contrary. Following panel precedent, we vacate and remand the case to the district court for further proceedings.

## I.    Background

Demmerick Brown is an inmate at Red Onion State Prison in Virginia.[1] In August 2020, right at the start of the COVID-19 pandemic, Brown walked from his cell to the barber shop to get a haircut and shave. He was wearing a facemask, as was required by prison policy. After Brown sat down, the barber told Brown to remove his facemask. Brown complied.

Two correctional officers were in the guard shack located directly across from the barbershop. Although the officers didn't tell Brown at the time that he was forbidden by prison regulation to remove his mask during his haircut and shave, they evidently noticed that he did: The next day, Brown received a disciplinary charge for failing to wear a mask in violation of prison rules.

---

[1] Because Brown appeals the grant of a motion to dismiss his case, we accept the allegations in his complaint as true. *Rockville Cars, LLC v. City of Rockville*, 891 F.3d 141, 145 (4th Cir. 2018).

Brown was entitled to a hearing where he could contest his disciplinary charge. In preparation, Brown sought to fill out the forms that he believed would allow him to present evidence and call witnesses at the hearing. Despite being assured that he would be given the necessary forms, he never received them, even after multiple requests. At the disciplinary hearing, Brown again pointed out his lack of forms and requested the hearing be postponed until he could fill out the appropriate paperwork. The hearing officer denied his request and proceeded with the hearing. Brown was found guilty of violating the prison's facemask policy and had fifteen dollars deducted from his prison trust account as a fine.[2]

On June 28, 2022, Brown sued three Red Onion prison officials, claiming under 42 U.S.C. § 1983 that they violated his Fourteenth Amendment due process rights.[3] He sought $1 million in punitive and compensatory damages as well as reimbursement of the fifteen-dollar fine, plus interest. The officials moved to dismiss the suit under Rule 12(b)(6). The district court granted the officials' motion, agreeing with several non-binding district court opinions that "small fines routinely assessed at disciplinary hearings do not trigger due process protections" because they do not impose an "atypical and significant hardship."

---

[2] Brown's complaint alleges that he was fined fifteen dollars. However, his later submissions indicate that he was only fined seven dollars out of a maximum possible penalty of fifteen dollars. Since we are reviewing the grant of a motion to dismiss, we follow the allegations made in his complaint, not in the later submissions. *See Rockville Cars,* 891 F.3d at 145. With that said, the eight-dollar difference does not materially affect our analysis.

[3] Brown previously made seven other unrelated claims against officials at a different prison. Those other claims and defendants were severed from this action, leaving only this one due process claim.

4

*Brown v. Stapleton*, No. 7:22-cv-00349, 2023 WL 4980212, at *3 (W.D. Va. August 3, 2023) (quotations omitted).  Brown timely appealed.

## II.      Discussion

The Fourteenth Amendment provides that no state may "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1. Determining whether a person's due process right has been violated is a two-step inquiry. We first ask whether the person has been deprived of a protected liberty or property interest. If so, we then ask whether the deprivation occurred without constitutionally sufficient process.  *See Bd. of Regents v. Roth*, 408 U.S. 564, 569–71 (1972); *Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015).

The district court below concluded that Brown failed at the first step because the fifteen-dollar fine did not deprive Brown of a cognizable property interest.  *See Brown*, 2023 WL 4980212, at *3.  The district court then granted the prison officials' motion to dismiss.  Reviewing the district court's decision to dismiss *de novo*, *see, e.g.*, *Rockville Cars,* 891 F.3d at 145, we now vacate the dismissal and remand the case.[4]

---

[4] Brown's briefing on appeal argues that his fifteen-dollar fine, in addition to violating his Fourteenth Amendment due process rights, also constituted an excessive fine in violation of the Eighth Amendment.  But even when construing his *pro se* complaint liberally, *see Estelle v. Gamble*, 429 U.S. 97, 106 (1976), we cannot discern an excessive fines claim.  We decline to consider this claim because "[a]bsent exceptional circumstances . . . we do not consider issues raised for the first time on appeal." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 242 (4th Cir. 2009) (quotation omitted).

## A.      Brown Was Deprived of a Property Interest

The reason we vacate is straightforward:  Contrary to the district court's determination, we recently held that inmates have a property interest in the money in their trust accounts.  In *Henderson v. Harmon*, we considered whether "deducting a sum of money from [a Virginia prison inmate's] trust account as restitution for an assault" nearly six years after the assault was a violation of due process.  102 F.4th 242, 245 (4th Cir. 2024).  This required us to ask, at the first step of the due process inquiry, whether the inmate had a property interest in his trust account at all.  We concluded that he did: "Henderson has a protected property interest in his prison trust account."  *Id.* at 248.

Our conclusion in *Henderson* was unsurprising.  A property interest is "a legitimate claim of entitlement" to an object or benefit "upon which people rely in their daily lives." *Bd. of Regents*, 408 U.S. at 577; *see also Fuentes v. Shevin*, 407 U.S. 67, 86 (1972) (clarifying that property interests are not limited to "the rights of undisputed ownership"). Such entitlements do not flow from "an abstract need or desire" or a "unilateral expectation," nor are they "created by the Constitution."  *Bd. of Regents*, 408 U.S. at 577. Instead, property interests "are created . . . by existing rules or understandings that stem from an independent source such as state law."  *Id.*  And Virginia state law is clear on prison trust accounts.  By statute, the Department of Corrections "shall establish for each inmate a personal trust account," and the "[f]unds in an inmate's personal trust account shall be paid to the inmate upon parole or final discharge."  Va. Code Ann. § 53.1–43.1. So Virginia state law has created these prison trust accounts and vested in its inmates a

6

legitimate claim of entitlement to the funds in those accounts. That creates a property interest.

Of course, the property interest in prison trust accounts is not unlimited. Having been "created" by statute, the property interest's "dimensions are defined" by statute. *Bd. of Regents*, 408 U.S. at 577. In other words, "if a statute creates a property right not previously recognized or one broader than that traditionally understood to exist, the property interest so created is defined by the statute." *Washlefske v. Winston*, 234 F.3d 179, 184 (4th Cir. 2000). This is why we previously held in *Washlefske* that no deprivation of property occurred "when Virginia expended the interest earned from Washlefske's prison accounts for the general benefit of inmates under the State's care." *Id.* at 180. Though Virginia by statute has created a property interest for its prison inmates in their prison trust accounts, the statute does not extend the property interest to the earned interest on those accounts without qualification. Instead, Va. Code Ann. § 53.1–44 expressly "vests the right to control such interest or income in prison authorities with the limitation that such funds be used for the benefit of inmates generally." *Washlefske*, 234 F.3d at 185. So the prison's use of the earned interest in Washlefske's account did not deprive him of a

7

property interest because the statute never granted him a property interest to exclude that use in the first place. *See id.* at 186.

But there is no express limitation in Virginia state law that permits fines to be deducted freely from prison trust accounts for disciplinary infractions.[5]  So the general property interest that Virginia inmates have in their prison trust accounts by statute applies to this case, *see Henderson*, 102 F.4th at 248, and the fifteen-dollar fine assessed against Brown's account deprived him of that property interest.  The Fourteenth Amendment does not allow that deprivation to occur without due process.  *See Washlefske*, 234 F.3d at 184 (stating that statutorily granted rights "may be withdrawn *so long as the State affords due process in doing so*." (emphasis added)).

In concluding otherwise, the district court erred.  But in fairness to the district court, *Henderson v. Harmon* was decided only after the district court dismissed Brown's case. Still, "the general rule is that an appellate court must apply the law in effect at the time it renders its decision." *Henderson v. United States*, 568 U.S. 266, 271 (2013) (cleaned up)

---

[5] Va. Code Ann. §§ 53.1–60 and 60.1 discuss court-ordered fines in the context of work-release programs that permit prisoners to earn wages working outside of the prison. These provisions are inapplicable to this case, which involves no work release.

8

(quoting *Thorpe v. Housing Auth. of Durham*, 393 U.S. 268, 281 (1969)).  So *Henderson v. Harmon* controls.

### B.      Neither *Sandin* nor Any *De Minimis* Exception Applies

The officials raise two main counterarguments on appeal to Brown's due process claim.[6]  Neither succeed.

First, the officials contend that the question of whether Brown was deprived of a property interest is governed not by *Henderson*, but by *Sandin v. Conner*, 515 U.S. 472 (1995).  In *Sandin*, the Supreme Court held that "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." *Id.* at 483–84.  But the Court clarified that not everything qualifies as a liberty interest.  Liberty interests are only recognized when they provide "freedom from restraint[s]" that would "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.  The ordinary restraints on liberty in prison do not impinge on due process.

The officials argue that Brown's fifteen-dollar fine fails to qualify as an "atypical and significant hardship" under *Sandin*, so it does not deprive Brown of a property interest.  Yet *Sandin* by its own terms is about deprivations of *liberty interests*—increases in sentence length, stints in solitary confinement, and the like.  A monetary fine does not fit

---

[6] As a third argument, the officials also argue that they are shielded by qualified immunity.  But they did not raise qualified immunity before the district court.  We thus "refuse to consider this defense on appeal" because "it was not preserved below." *Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 305 (4th Cir. 2006).

into this list. Money is instead indisputably a *property interest*. *See Bd. of Regents*, 408 U.S. at 571–72 (listing "ownership of real estate, chattels, [and] money" as core examples of property interests). And *Sandin* is silent on how to handle property interests; indeed, the opinion fails to use the word "property" even once.

Nor does the reasoning of *Sandin* extend cleanly to property interests. One of *Sandin*'s principal concerns was that the overprotection of liberty in prison hampered the "flexibility" necessary for "state officials trying to manage a volatile environment." *Sandin*, 515 U.S. at 482. The problem is that many of the regulations overseeing the ordinary incidents of prison life can be framed as a deprivation of an inmate's liberty. Thus, in the years prior to *Sandin*, inmates had brought lawsuits over alleged deprivations of liberty interests ranging from "transfer[ring] to a smaller cell without electrical outlets for televisions" to "receiving a tray lunch rather than a sack lunch." *Id.* at 483 (citations omitted). To curtail this "involvement of federal courts in the day-to-day management of prisons," the *Sandin* Court established that the due process right is not implicated by restrictions and punishments that fall "within the expected perimeters of the sentence imposed by a court of law." *Id.* at 482, 485.

It is readily apparent why prison administrators need some flexibility to restrict inmate liberty. In addition to managing the day-to-day of mealtimes and dress codes, "[p]rison administrators need be concerned with the safety of the staff and inmate population." *Id.* at 482. They may need to shuffle potentially dangerous inmates to a more secure prison. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). Or they may need to place inmates who are potential escape risks in administrative segregation. *See Beverati v.*

10

*Smith*, 120 F.3d 500, 502 (4th Cir. 1997). Within broad limits, such restrictions do not impose "a dramatic departure from the basic conditions" of an inmate's sentence. *Sandin*, 515 U.S. at 485. They are instead part and parcel of the restriction of liberty that a prison sentence ordinarily entails. So inmates have no constitutionally protected liberty interest in avoiding them.

But it is far less apparent why prison officials would need the same flexibility in depriving inmates of their property. To be sure, state law can largely define at the outset what qualifies as an inmate's property within the prison. So, for example, inmates have no property interests in items specified to be contraband, and such contraband can be confiscated without due process. *See Hanvey v. Blankenship*, 631 F.2d 296, 297 (4th Cir. 1980). But once an inmate is granted a property interest by an independent source such as state law, it's hard to see how the deprivation of that property interest would be so important in prison administration as to be considered part and parcel of a prison sentence. An inmate sentenced to prison presumably expects to spend time in a cell, to listen to orders, and to eat and sleep on a rigid schedule; he presumably does not expect to have what little property in prison he lawfully owns taken arbitrarily.

Thus, by both its terms and its reasoning, *Sandin* is inapplicable to determining whether an inmate has been deprived of a property interest at the first step of the due process inquiry.[7] As confirmation, we note that the Supreme Court has only ever applied

---

[7] In concluding so, we part ways with the Tenth Circuit, which has expressly applied *Sandin* to property interests in prison. *See Cosco v. Uphoff*, 195 F.3d 1221, 1223–24 (10th Cir. 1999). We instead align ourselves with the Second and Fifth Circuits, which have (Continued)

11

the *Sandin* standard to cases involving liberty interests in prison. *See McKune v. Lile*, 536 U.S. 24, 37–38 (2002); *Wilkinson v. Austin*, 545 U.S. 209, 222–23 (2005). And this aligns with the Court's practice of assessing liberty interests and property interests separately within the same case. *See Bd. of Regents*, 408 U.S. at 572, 576. Accordingly, nothing stands in the way of applying *Henderson* to this case and concluding that the fifteen-dollar fine deprived Brown of a property interest. *See Henderson*, 102 F.4th at 248.

The officials raise a second counterargument. They contend that even if Brown possesses a property interest in the money in his prison trust account, the fifteen-dollar fine was so *de minimis* that it does not qualify as a deprivation. We need not decide whether a *de minimis* exception to the Due Process Clause exists for us to reject this argument. Fifteen dollars may be a sum of small consequence outside prison walls, but it is of great significance within them: the amount is more than a week's worth of wages at Red Onion State Prison where Brown is incarcerated. *See* Prison Policy Initiative *Amicus* Br. at 6. So even if a *de minimis* floor exists for property interests, Brown's fine does not fall below it. The Due Process Clause applies here.

\* \* \*

Now that we have "determined that the Due Process Clause applies, 'the question remains what process is due.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985) (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)). But "we are a court of

---

declined to extend *Sandin* to property interests. *See Handberry v. Thompson*, 446 F.3d 335, 353 n.6 (2d Cir. 2006); *Bulger v. U.S. Bureau of Prisons*, 65 F.3d 48, 50 (5th Cir. 1995).

review, not of first view." *Grimmett v. Freeman*, 59 F.4th 689, 696 (4th Cir. 2023) (quotation omitted).  Having vacated the district court's dismissal at step one of the due process inquiry, we remand for the district court to conduct step two.  *See Prieto*, 780 F.3d 248.  In doing so, the district court should also assess whether any errors in Brown's disciplinary proceedings were harmless.  *See Lennear v. Wilson*, 937 F.3d 257, 276 (4th Cir. 2019).

*VACATED AND REMANDED*

13